Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorneys for Plaintiff
BRITTANY MacDONALD

## UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| BRITTANY MacDONALD,<br><br>                    Plaintiff,<br><br>v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity; WAYNE MONFRIES, An Individual; RUTH BEYER, An Individual; MAHTAB BRAR, An Individual; JAMES A. CARLSON, An Individual; DANNY JACOBS, An Individual; SUSAN KING, An Individual; CHAD PAULSON, An Individual; SUE STEWARD, An Individual; STEVE ZIKA An Individual; and DOES 1 THROUGH 50, Inclusive,<br><br>                    Defendants | Case No.:<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff BRITTANY MacDONALD hereby alleges as follows:

## PARTIES

1.      Plaintiff at all times relevant herein was a nurse formerly employed by Defendant OREGON HEALTH AND SCIENCE UNIVERSITY ("OHSU") for approximately nine years, from October 8, 2012 until December 2, 2021.

2.      Plaintiff also is, and at all times relevant herein was, a practicing Christian and thus a member of a class of employees protected under Title VII of the federal Civil Rights Act of 1964 ("Title VII").  As permitted under Or. Admin. R. 333-019-1010(3)(a), sought from Defendant OHSU a religious exception from the State of Oregon's requirement that all healthcare workers in the state be vaccinated against COVID-19.  Plaintiff objected to receiving a COVID-19 vaccine because the manufacturers of all such vaccines then available in the United States at or near the time of the events giving rise to this case used cells from aborted babies in the production of the vaccines.  Plaintiff held a sincere religious conviction that "taking abortion-tainted vaccinations into my body" would violate her religious beliefs concerning the sanctity of life in the womb and defile her body in disobedience to God.

3.      Defendant OHSU is, and at all times herein was, a public corporation and governmental entity performing governmental functions and exercising governmental powers, as indicated under Or. Rev. Stats. § 353.020.  OHSU is, and at all times relevant herein was, an employer as defined by Title VII.  OHSU is openly pro-abortion, and its Vaccine Exemption Review Committee ("VERC") openly expressed hostility toward the religious of views of certain employees who sought religious exemptions from the COVID-19 vaccination requirement, including those of Plaintiff, declaring that those beliefs were unworthy of a religious exception.

4.    Defendants WAYNE MONFRIES ("MONFRIES"), RUTH BEYER ("BEYER"), MAHTAB BRAR ("BRAR"), JAMES A. CARLSON ("CARLSON"), DANNY JACOBS ("JACOBS"), CHAD PAULSON ("PAULSON"), SUE STEWARD ("STEWARD"), and STEVE ZIKA ("ZIKA," and collectively with MONFRIES, BEYER, BRAR, CARLSON, JACOBS, PAULSON, and STEWARD the "Board Defendants") all serve in various roles on Defendant OHSU's Board of Directors. Defendant JACOBS is also OHSU's president and the only member of OHSU's executive team to serve on OHSU's board. The Board Defendants are, and at all times relevant herein were, directly responsible for establishing OHSU's institutional strategy and policy concerning religious exemptions from COVID-19 vaccinations for OHSU's employees that the VERC was responsible for administering, including determining which religious beliefs were worthy of exemptions and which were not.

5.    The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiff, who therefore sues said Defendants under such fictitious names. Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiff thereby, as herein alleged. The DOES include members of the VERC, who were directly responsible for making the decision to deny Plaintiff a religious exemption in violation of her constitutional rights. Plaintiff will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

6.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

7.      This Court has jurisdiction over all Defendants pursuant to 28 U.S.C.
§ 1331 because Plaintiff's action arises under the constitution and laws of the
United States.

8.      This Court has authority to award the requested damages pursuant to
28 U.S.C. § 1343; the requested declaratory relief under 28 U.S.C. §§ 2201 and
2202; and costs and attorneys' fees under 42 U.S.C. § 1988.

## VENUE

9.      Plaintiff refers to and hereby incorporates the foregoing paragraphs as
though fully set forth herein.

10.     Venue is proper in the Court's Portland Division because the events
giving rise to this Complaint occurred in the County of Multnomah and all agents,
employees, or other persons working for, or in concert with, Defendant OHSU
with regard to the events giving rise to this case are located in, employed in, and/or
residents of the County of Multnomah.

## GENERAL ALLEGATIONS

11.     Plaintiff refers to and hereby incorporates the foregoing paragraphs as
though fully set forth herein.

12.     OHSU is Oregon's only public medical school and one of the few
state-run universities in the United States devoted exclusively to educating doctors,
nurses, pharmacists, and other healthcare professionals.  OHSU operates multiple
hospitals in the Portland area in accordance with its healthcare-centered
educational and clinical missions.

13.     OHSU is also openly in favor of abortion, which ends the life of an
unborn child *in utero*.  In fact, on June 24, 2022 – the same date on which the
Supreme Court overturned *Roe v. Wade*, the 1972 decision that made abortion
legal nationwide, and declared that because there is no federal constitutional right

to abortion, states are now free to decide for themselves whether abortion will be lawful within their borders – OHSU issued a press release headlined "Abortion Is Essential Healthcare" and affirmed its commitment to providing abortions and related services.  *See* Attached **Exhibit "A"** [a copy of said press release].[1]

14.    The Board Defendants serve in the following roles on OHSU's governing board:

      a. MONFRIES – Chair

      b. BEYER – Vice Chair

      c. CARLSON – Senior Advisor

      d. JACOBS – University President

      e. KING, PAULSON, and ZIKA – Members

      f. BRAR – Student Representative

15.    The Board Defendants are, and at all times relevant herein were, collectively responsible for establishing policies and protocols aimed at ensuring the health and safety of OHSU's employees and patients during the COVID-19 pandemic (the "Pandemic").

16.    In August 2021, at the height of the Pandemic, Oregon Governor Kate Brown ("Gov. Brown" or the "Governor") sought to limit the spread of the potentially deadly coronavirus ("COVID-19") in the state's healthcare facilities by issuing an executive order (the "Vaccine Mandate" or the "Mandate") requiring healthcare workers to be vaccinated against COVID-19 by October 18, 2021.  *See* Or. Admin. R. 333-019-1010.  However, the Governor's Vaccine Mandate allowed healthcare workers to seek, and the hospitals, clinics, and other organizations who

---

[1] Ironically, the press release also declares OHSU's commitment "to ensuring a ***respectful, welcoming and <u>inclusive</u> place*** to learn, ***<u>work</u>*** and receive care for all people regardless of gender, race, ***religion*** and sexual orientation" (emphasis added).  As the facts stated herein indicate, OHSU has failed to live up to this stated commitment.

employed them to grant, religious exemptions from the vaccination requirement. *Id.*, subsections (3)-(4). Gov. Brown's Mandate also expressly states that "[n]othing in this rule is intended to prohibit schools or school-based programs … from … ***Complying with Title VII of the Civil Rights Act, and state law equivalents***, for individuals ***unable*** to be vaccinated due to … a sincerely held religious belief." *Id.*, subsection (5)(a) (emphasis added).

17.    In accordance with Gov. Brown's Mandate, OHSU required all of its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception by October 18, 2021.

18.    Plaintiff is a registered nurse who served in OHSU's Mother Baby Unit for approximately nine years, starting on October 8, 2012. Petitioner was qualified to serve in that position and was an exemplary employee throughout her tenure at OHSU.

19.    Plaintiff is also a practicing non-denominational Christian who opposes abortion on religious grounds, as she believes life begins in the womb and that, accordingly, abortion is the taking of a human life – i.e., murder, which the Bible explicitly prohibits. *See* Exodus 20:13. Plaintiff has manifested her religious opposition to abortion in both her professional and personal lives:

> a. Professionally, Plaintiff refused to participate in abortions as part of her job-related duties as OHSU – her conscience would not allow it. OHSU, to its credit, was accommodating of Plaintiff's religious beliefs in that regard.

> b. Personally, when pregnant with her third daughter, Plaintiff endured physical and mental hardships related to the pregnancy. At one point, she became very sick and ran out of options for safe medications. Even so, she declined medical procedures that she felt would harm her unborn baby. Plaintiff put her unborn child's

life ahead of her own well-being because she so strongly believes
that life begins in the womb.

20.     When researching the COVID-19 vaccines currently available in the
United States at the time Gov. Brown issued her Mandate, Plaintiff discovered that
the vaccines' manufacturers used cells from aborted babies either in the testing and
development of the vaccines or in the vaccines themselves.

21.     Based on much prayer and Bible study, Plaintiff determined that she
was unable, in accordance with Christian principles, to take a COVID-19 vaccine.
Accordingly, as allowed under Or. Admin. R. 333-019-1010(3)(a), on or about
September 19, 2021, Plaintiff submitted a religious exception request to OHSU, a
copy of which is attached hereto as **Exhibit "B."**

22.     In her religious exception request, Plaintiff provided multiple reasons
why her faith prohibited her from taking a COVID-19 vaccine.  *See* Ex. "B."
Plaintiff extensively backed up her assertions with quotations from Scripture.  *Id.*

23.     The religious beliefs Plaintiff holds, and at all times relevant herein
held, that render her unable to take a COVID-19 vaccine include the following:

  a. All children are created by God for a purpose.  *See* Jeremiah 1:5.
     Therefore, Plaintiff cannot support, financially or otherwise,
     organizations that profit from the taking of unborn lives – either
     directly, as the abortion industry does, or indirectly, as the
     COVID-19 vaccine manufacturers who use cells from aborted
     babies at any stage in the production of the vaccines do – as doing
     so would contribute to the destruction of lives that God created.

  b. Her body is a temple of the Holy Spirit that belongs not to herself,
     but to God, and it is therefore a sin – i.e., disobedience to God – to
     defile her body.  1 Corinthians 3:16-17, 6:19 and 2 Corinthians
     1:7.  Taking a vaccine whose manufacturer used the human

remains obtained through the deliberate killing that occurs via abortion would, in Plaintiff's view, defile her body.

c. Disobedience to God comes with consequences, either in this life or beyond. 2 Corinthians 5:10. Obedience to God, however, will be rewarded. Revelations 2:10. Plaintiff did not wish to one day stand before God's judgment throne and have to explain why she defiled her body despite receiving divine guidance from God.

24.    On October 7, 2021, OHSU notified Plaintiff via e-mail that the VERC had rejected her religious exception request. A copy of OHSU's notice of rejection is attached hereto as **Exhibit "C."**

25.    In denying Plaintiff's religious exception request pursuant to policies established by the Board Defendants, the VERC made no assertion that OHSU could not accommodate her sincerely held religious beliefs due to undue hardship. *See* Ex. "C." Rather, the VERC deemed several religious beliefs to be unworthy of accommodation – three of which Plaintiff held:

a. Foremost among the religious beliefs OHSU considered unworthy of accommodation, for purposes of this case, was "an objection to the vaccine on the basis of fetal cell concerns, in the vaccines or in testing and development." *See* Ex. "C." Plaintiff held such a religious objection. *See* Ex. "B."

b. OHSU also deemed objections to COVID-19 vaccines "based on bodily integrity or sanctity and/or a belief that the vaccine is 'unclean'" to be unworthy of accommodation. *See* Ex. "C." As indicated by her statement that her body is a temple of the Holy Spirit that is not to be defiled by a vaccine tainted by its manufacturer's use of cells from aborted babies in the production of the vaccine, Plaintiff's beliefs fell into this category as well.

c.  OHSU declared that "personal revelation[s] from God about the vaccine" were unacceptable.  *See* Ex. "C."  Plaintiff did not say she had a personal revelation, but she did state that she had been "moved by the Holy Spirit to reject the vaccine repeatedly" and received "divine guidance" from God.  *See* Ex. "B."

26.    The VERC's rejection e-mail also stated in boldfaced letters, "OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member."  *See* Ex. "C."  This statement, at best, ignores or demonstrates an extreme lack of sensitivity toward the religious convictions that moved Plaintiff to seek a religious exception in the first place – convictions that no true religious adherent, including Plaintiff, could abandon, even if it meant keeping her job.  At worst, the statement demonstrates hostility toward beliefs like Plaintiff's by pressuring them to choose between their sincerely held religious convictions and the promise of steady employment – a choice Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make.

27.    Attached hereto as **Exhibit "D"** is a copy of a document that OHSU circulated to its employees essentially declaring that religious exception requests rooted in concerns about manufacturers' use of cells from aborted babies would be automatically rejected.  In the document, OHSU effectively asserts that because several high-profile religious organizations issued public statements approving the use of COVID-19 vaccines despite their connection to abortion, OHSU employees who belonged to those organizations' faiths had no reason not to get vaccinated.

28.    Based on the foregoing, OHSU did not engage in a good-faith, interactive exploration of potential accommodations that would have allowed employees whose religious convictions concerning abortion rendered them unable to take a COVID-19 vaccine, including and especially Plaintiff, to continue working, as Title VII requires.

29.     Such accommodations were available.  Had OHSU provided such accommodations, Plaintiff and other OHSU employees who sought religious or medical exceptions from the Governor's Vaccine Mandate would have happily submitted to them as a condition of maintaining their employment.

30.     Despite the availability of accommodations that would have allowed Plaintiff to continue working, OHSU offered no accommodations to Plaintiff.

31.     OHSU ultimately fired Plaintiff on or about December 3, 2021.  A copy of Plaintiff's termination letter is attached hereto as **Exhibit "E."**

32.     As of this writing, Plaintiff is employed at another hospital that has provided her a religious exception from the Governor's Vaccine Mandate.  However, she is earning significantly less money than she made at OHSU and is not working with babies, the job for which she is most qualified and which is her passion.

33.     As a condition of filing the herein lawsuit, Plaintiff has obtained a right-to-sue letter from the EEOC.  That letter is attached hereto as **Exhibit "F."**

34.     Attached hereto as **Exhibit "G"** is a printout from the website TimeandDate.com showing when the 90-day statute of limitations set forth in Plaintiff's right-to-sue letter is set to expire.  Plaintiff has attached this printout hereto as proof that she has timely filed this lawsuit.

## FIRST CAUSE OF ACTION:
### Violation of Title VII – Failure to Accommodate
### [42 U.S.C. § 2000e-2]
### Against Defendant OHSU

35.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

36.     Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

37.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

38.    Defendant OHSU is as an employer under Title VII.

39.    The term "religion," for purposes of Title VII, "includes ___all___ aspects of religious observance and practice, *as well as belief* …" 42 U.S.C. § 2000e(j) (emphasis added).

40.    As s practitioner of Christianity, Plaintiff belongs to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a).

41.    Plaintiff sincerely believes that "taking abortion-tainted vaccinations into my body" would violate her religious convictions concerning the sanctity of life in the womb and defile her body in disobedience to God.  *See* Ex. "B."

42.    Plaintiff's bona fide religious belief conflicted with her employment-related duty to receive a COVID-19 vaccine in accordance with the Governor's Vaccine Mandate.  *See* Ex. "B."

43.    Plaintiff informed her employer, Defendant OHSU, of the conflict between her religious beliefs and her employment-related duties.  *See* Ex. "B."

44.    Defendant OHSU subjected Plaintiff to discriminatory treatment by declaring her beliefs unworthy of a religious exception on October 7, 2021, threatening to fire her on the same if she declined to be vaccinated, then actually firing her on December 2, 2021.  *See* Exs. "C"-"E."

45.    Defendant OHSU made no attempt to accommodate Plaintiff's bona fide religious beliefs, as Title VII requires.

46.    Defendant OHSU made no assertion to Plaintiff that OHSU would incur undue hardship by accommodating Plaintiff's beliefs.  OHSU simply

threatened Plaintiff with termination of employment if she would not get vaccinated, thereby coercing her to choose between abiding by her sincerely held religious beliefs and remaining employed.

47.    Defendant OHSU could and should have provided reasonable accommodations for Plaintiff's beliefs, as accommodations that would have allowed Plaintiff to continue working while significantly limiting the likelihood of spreading COVID-19 were available.  OHSU offered no accommodations to Plaintiff, opting to take adverse employment actions against her instead.

48.    Religious discrimination is truly what motivated Defendant OHSU to get rid of Plaintiff, any assertion by SPS to the contrary notwithstanding.

49.    Based on the foregoing, Defendant OHSU has discriminated against Plaintiff in violation of Title VII.

## <u>SECOND CAUSE OF ACTION:</u>
### Violation of Constitutionally Protected Freedom of Religion
### [U.S. Const. amend. I; 42 U.S.C. § 1983]
### Against the Board Defendants and DOES 1-50

50.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

51.    Under 42 U.S.C. § 1983, anyone who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

52.    Under 42 U.S.C. § 1983, state actors like the Board Defendants and the VERC's members – whose identities have yet to be ascertained – forfeit their qualified immunity from liability when, acting in their official capacities, they

deliberately infringe on constitutional rights: "[A] state official who violates federal law '*is in that case stripped of his official or representative character and is subjected in his person to the consequences* of his individual conduct.'" *Le Duyet Hung v. Washington*, 2006 U.S. Dist. LEXIS 1956 at **6-7 (D. Or. Jan. 6, 2006) (emphasis added) [quoting *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)].

53.     The Free Exercise Clause of the U.S. Constitution's First Amendment, made applicable to states via the Fourteenth Amendment, prohibits state governments from infringing on individuals' freedom of religion. The Fourteenth Amendment prohibits state governments from "depriv[ing] any person of life, *liberty*, or property without due process of law." U.S. Const. amend. XIV, § 1 (emphasis added).

54.     "The Free Exercise Clause protects against government hostility that is masked as well as overt." *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (1993) (*Lukumi*). Acting under color of state law, the Board Defendants expressed overt hostility toward the religious beliefs of certain OHSU employees, including and especially Plaintiff, by declaring which religious beliefs were worthy of religious exceptions from the Governor's Vaccine Mandate and which religious beliefs were not.

55.     Furthermore, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious belief, *the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain*." *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 221 (1963) (*Schempp*) (emphasis added). Acting under color of state law, the Board Defendants effectively declared that because multiple high-profile religious organizations had expressed approval of COVID-19 vaccines despite their connection to abortion, OHSU employees belonging to those

organizations' faith essentially had no excuse for not receiving a COVID-19 vaccine. In so doing, the Board Defendants overstepped their constitutional bounds, pressuring Plaintiff to conform to the prevailing approved religion.

56.    Acting under color of state law, the members of the VERC – whose identities have yet to be ascertained – effectively penalized Plaintiff for adhering to her sincere, religiously-based objection to receiving a COVID-19 vaccine by threatening to fire, and then firing, Plaintiff. The VERC's members forced Plaintiff to choose between the government-provided benefit of continued employment with OHSU and following her religious beliefs. This, the U.S. Constitution prohibits.

57.    Even assuming Defendant OHSU had a compelling interest in halting the spread of COVID-19 to its employees and patients, the VERC's members could – and should – have reasonably accommodated Plaintiff's beliefs and allowed her to keep working. The actions of the Board Defendants in declaring which religious beliefs were worthy of accommodation, and the VERC's actions in enforcing the policy established by the Board Defendants toward that end, were thus not narrowly tailored and cannot survive strict scrutiny under the U.S. Constitution's First Amendment.

58.    Based on the foregoing, the Board Defendants and DOES 1-50, including the members of the VERC, have deprived Plaintiff of her constitutionally protected freedom of religion.

## REQUEST FOR DECLARATORY RELIEF

59.    Plaintiff refers to and hereby incorporates the foregoing paragraphs as though fully set forth herein.

60.    As stated *supra*, "[t]he Free Exercise Clause protects against government hostility that is masked as well as overt." *Lukumi*, 508 U.S. at 534.

By declaring which religious beliefs were worthy of religious exceptions from the Governor's Vaccine Mandate and which religious beliefs were not, the Board Defendants have openly displayed overt hostility to Plaintiff's religious beliefs in violation of the Free Exercise Clause. *See* Ex. "D." The VERC's members did likewise in asking Plaintiff to reconsider her religious objection to receiving a COVID-19 vaccine as a condition of maintaining her employment. *See* Ex. "C."

61.     As also stated *supra*, "[w]hen the power, prestige and financial support of government is placed behind" – or, for that matter, against – "a particular religious belief, ***the indirect coercive pressure upon religious (individuals) to conform to the prevailing approved religion is plain***." *Schempp*, 374 U.S. at 221. By declaring which religious beliefs were worthy of religious exceptions from the Governor's Vaccine Mandate and which religious beliefs were not, the Board Defendants placed coercive pressure on Plaintiff to conform to the prevailing approved religion. *See* Ex. "D." The VERC's members did likewise in asking Plaintiff to reconsider her religious objection to receiving a COVID-19 vaccine as a condition of maintaining her employment. *See* Ex. "C."

62.     Based on the foregoing, the Court should declare that the Board Defendants' policy declaring which beliefs are worthy of religious exceptions to Gov. Brown's Vaccine Mandate and which beliefs are not violates the U.S. Constitution's Free Exercise Clause on its face.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### **ON ALL CAUSES OF ACTION:**

1.     For declaratory relief, as stated *supra*;

2.     For economic damages in an amount according to proof at trial;

3.     For non-economic damages in an amount according to proof at trial;

4.      For punitive damages in an amount according to proof at trial;

5.      For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

6.      For such other and further relief as the Court may deem proper.


Dated: December 15, 2022                    PACIFIC JUSTICE INSTITUTE
                                            __/s/ RAY D. HACKE_____
                                            Ray D. Hacke
                                            Attorneys for Plaintiff
                                            BRITTANY MacDONALD

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a16 party to the within action; my business address is 1850 45th Ave., Suite 33, Salem, OR 97305.

On or about December 15, 2022, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND DEPRIVATION OF CIVIL RIGHTS [42 U.S.C. § 1983]**

## PLEASE SEE ATTACHED SERVICE LIST

__X__ BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

_____X__BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

_____(State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on December 15, 2022, at Salem, Oregon.

*/s/ LAUREN PEFFERLE*
Lauren Pefferle

_____

## SERVICE LIST

Alice Cuprill-Cuomas
Executive Vice President & General Counsel
Oregon Health & Science University
3181 SW Jackson Park Rd., Suite L85
Portland, OR 97239

# EXHIBIT "A"

Browse Stories

Awards and Accomplishments

Community

COVID-19

Education

Health Care

Labor Relations

Philanthropy

Research

Viewpoint

f Share    🐦 Tweet    in Share    ✉ Email    🖨 Print

# Abortion is essential health care

🕐 June 24, 2022    📍 Portland, Oregon



*Content warning: In support of trauma-informed communications, please be aware that this message contains topics that may be activating for some community members. The Confidential Advocacy Program*  *can be reached 24/7 by calling 833-495-2277. Additional resources for OHSU members are available here* *.*

Every day at OHSU, thousands of dedicated researchers, clinicians, students and staff advance our focus of healing, teaching and discovery, to improve not just the lives of Oregonians, but of all those who interact with this institution. They do so with science as their guide and the belief that every individual should be able to make informed health care decisions for themselves, including whether or not to access abortion care.

History shows us that the impact of today's decision by the United States Supreme Court to roll back the protections of *Roe v. Wade* guarantees one thing: Abortion will become unsafe and less accessible for far too many people in this country. It should not be this way. We believe that access to health care of any kind, including abortion, should not be limited by location, resources, bias, prejudice or the absence of care.

Here at OHSU, we are resolute in our commitment to provide the full continuum of sexual and reproductive health care — including abortion — to all who seek it, and to educate the next generation of clinicians and advance groundbreaking research. As we face a post-*Roe* world, we acknowledge the increased responsibility we have, along with other providers in Oregon, to ensure people from out-of-state are able to access the critical care they need.

To the individuals who need this care, we stand with you. To the dedicated clinicians and advocates who work tirelessly to provide and advance abortion care, we stand with you. OHSU is committed to doing everything we can to support and advocate for you and for equitable access to comprehensive reproductive services for all people.

*OHSU is committed to ensuring a respectful, welcoming and inclusive place to learn, work and receive care for all people regardless of gender, race, religion and sexual orientation. Our position on this issue is based on our obligation to improve the health and well-being of Oregonians and beyond, not on politics. In taking a position on any issue, OHSU acknowledges that some within the community may disagree. We encourage respectful conversation and feedback so that we may all better understand one another. Only together can we fulfill our mission and stimulate the spirit of inquiry, initiative and cooperation among students, faculty and staff.*

---


Previous Story
OHSU statement on gun violence, public safety

Next Story
PUBLIC NOTICE: Northwest Commission on Colleges and Universities to conduct comprehensive evaluation of OHSU on Oct. 24-26, 2022


Media Contact

OHSU Communications

503 494-8231 ☎

Email OHSU ✉

Related


OHSU's position is steadfast: Abortion is health care

# EXHIBIT "B"

**OHSU Member COVID-19 Vaccine**
**Religious Exception Request Form**

*OHSU Members requesting religious exceptions must personally complete Part A, B and C. All OHSU Members requesting an exception must watch the required video on Occupational Health's webpage. Completed forms should be uploaded into Enterprise Health.*

**Part A: OHSU Member Name and Identifying Information**

Name: Brittany K MacDonald

Mailing Address: 1916 NW 146th ST.

City: Vancouver  State: WA  Zip Code: 98685

Preferred Pronoun(s): NA  Preferred Phone: 971-803-2448

Preferred Email brittanykayrn@gmail.com  Preferred Method of Contact: email.

Employee/Student ID #: 71210  Job Title: RN

Manager/Supervisor: Margaret Grace

Department: Bc MBC

**Part B:  Religious Exception Request**

Name of Religion: Christianity

X _____ Receiving the COVID-19 vaccination conflicts with my religious observances, practices or
beliefs  as described below.

Please describe your religious observances, practices or beliefs and how it affects your ability to receive a COVID-19 vaccination

See attatched

Is there any other information regarding your beliefs, observances, or practices that would help us evaluate your request?   (for example, have you previously declined medical care because of your religious beliefs?)

See attatched

A recognized professional, (i.e. religious affiliate), who is familiar with your needs and can substantiate your request, may need to be contacted. Please provide the following information regarding the religious affiliate: *See attached*

Name of Professional: *N.A.*
Title: *NA*
Represented Organization: *NA*

Street Address: *NA*

City:                     State:                          Zip Code:

Telephone: *NA*                          Email: *NA*

How long have you had a relationship with the recognized religious professional?:

*See attached*

**AUTHORIZATION:** I authorize Oregon Health & Science University (OHSU) to discuss my circumstances, religious practices, observances and beliefs with the professional religious affiliate named above, and I authorize that religious affiliate to discuss my need for reasonable accommodation with OHSU.

*B MacDonald    9/19/2021*
Signature

**Part C:  OHSU Member Attestation**

It is OHSU's position that COVID-19 is a highly contagious respiratory virus that affects people of all ages. This virus can cause long-term medical problems and death regardless of age. This virus spreads through respiratory secretions related to speaking, singing, yelling, coughing, and sneezing. Infected individuals can spread the virus to others. Up to 50% or more of people can be infected without realizing it. The COVID-19 vaccines are very safe and highly effective at preventing death and hospitalization. When large numbers within a population are immunized, viral spread will be significantly limited and the development of viral variants can be slowed . Each individual of a community can contribute to this protective approach.

**By signing this form, I acknowledge and affirm that:**

- I am requesting a religious exception from receiving the COVID-19 vaccination.
- OHSU recommends individuals receive COVID-19 vaccination to protect themselves, their families and people they work or live with.
- I understand OHSU's position is that if I am not vaccinated, I may become sick with COVID-19 and may put others at risk of serious illness, disability or death.
- If I am a student, I understand not being vaccinated against COVID-19 may impact my ability to participate in external rotations that require vaccination and this may impact my academic progression.
- I have received information about how the vaccine helps protect against COVID-19.
- I have reviewed the materials available on https://www.ohsu.edu/health/unsure-about-covid-

vaccines-information-consider-and-how-learn-more and watched the required video on vaccination.
• If I want to, I have been able to ask questions and have my questions answered.
• It is my decision to decline vaccination at this time, even though I have received information about why it is important and the risk of not getting vaccinated. I understand that I may change my mind in the future and receive a vaccination.

By signing this form, I declare and acknowledge that I have read and understand the information on this form. Notwithstanding, I am requesting a religious exception from the COVID-19 vaccine.

Signature of OHSU Member: _B MacDonald_ Date: _9/19/2021_

Upload this completed form to Enterprise Health at https://webchartnow.com/ohsu/webchart.cgi.

PERSONAL AND CONFIDENTIAL
NOT FOR RELEASE OR DISCLOSURE

B.K. MacDonald
September 19, 2021

The following answers are provided in response to OHSU's Member COVID-19 Vaccine Religious Exemption Request Form. These answers are to be considered part of the document I have submitted to OSHU Enterprise Health.

**Question 1:**

I request this exemption and accommodation under the Free Exercise Clause of the First Amendment to the United States Constitution, the Americans with Disabilities Act and Civil Rights Act of 1964, and based upon my sincerely held religious beliefs. My sincerely held religious beliefs requiring accommodation are based on Biblical commands and principled Christian teachings as set forth in my answer to Question 1 and in my answer to Question 2.

I firmly believe I have a clear moral duty to refuse the use of medical products, including certain vaccines, that are created using human cell lines derived from abortion during any stage of the vaccine's development, including the testing phase of development of a medical product. My beliefs regarding the sanctity of human life conflict directly with any requirement to inject abortion-tainted vaccinations into my body. All available COVID vaccines utilize abortion-derived cell lines in either the confirmation and testing stage of development or in the production process.

I further believe that my body is the Temple of the Holy Spirit and I, as a Christian, am compelled to protect it from defilement. 1 Corinthians 3:16-17 provides me guidance "Do you not know that you are a temple of God and that the Spirit of God dwells in you? If any man destroys the temple of God, God will destroy him, for the temple of God is holy, and that is what you are." As a Christian protecting my body from defilement according to God's law, I invoke my religious right to refuse any vaccine which utilized abortion-derived cell lines at *any* stage of the creation of the vaccine. Further, insofar as the vaccines also contain neurotoxins, hazardous substances, attenuated viruses, animal parts, foreign DNA, albumin from human blood, carcinogens and chemical wastes that are proven harmful to the human body, I find injection of the same to be in direct conflict with my Christian duty to protect my body as the temple of the Holy Spirit. Citing Tobit 2:21 as binding Biblical authority, Father Michael Copenhagen has

PERSONAL AND CONFIDENTIAL
NOT FOR RELEASE OR DISCLOSURE

B.K. MacDonald
September 19, 2021

stated, "the recipient [of an abortion-tainted vaccine] is an immediate participant in the commission of continuous theft of human remains obtained through deliberate killing, their desecration through exploitation and trafficking, as well as ultimate omission to respectfully bury them." 2 Corinthians 1:7 guides me in alignment with Father Copenhagen: "Therefore, having these promises, beloved, let us cleanse ourselves from all defilement of flesh and spirit, perfecting holiness in the fear of God."


**<u>Question 2:</u>**

I firmly believe the Holy Spirit helps guide and directs my actions. I believe such assistance is provided through Prayer and through spiritual interactions experienced when I am open to receiving them. I have prayed intently on the question to receive the COVID-19 vaccination and have been moved by the Holy Spirit to reject the vaccine repeatedly; I cannot/will not ignore the presence of God in helping guide my decision. As set forth in Proverbs 3:5-6 "Trust in the Lord with all your heart and lean not on your own understanding; in all your ways submit to him, and he will make your paths straight." Additionally, I find guidance in Philippians 4:6-7 " Do not be anxious about anything, but in every situation, by prayer and petition, with thanksgiving, present your requests to God. And the peace of God, which transcends all understanding, will guard your hearts and your minds in Christ Jesus." I cannot, in good conscience, take the vaccine and defy my religious experiences and the divine guidance I have received.


I firmly believe in an individual's right to make their own choices in life as I am confident in God's judgement after this mortal existence. There are consequences for our actions. 2 Corinthians 5:10 states: "For we must all appear before the judgment seat of Christ, so that each of us may receive what is due us for the things done while in the body, whether good or bad." That stated, I am firmly against abortion. I believe in the miracle of life. I strongly oppose abortion and of its morally offensive derivatives used in the for-profit research and development of these vaccines. I am strongly opposed to the (illegal) requirement by the State that, as a nurse, I must be injected with it against my will and against God's will. This is not in line with Christ's teaching in Mark 12:17: "Give back to Caesar what is Caesar's and to God what is God's." My body is not the State's or OHSU's property, it will not be given to "Caesar."

PERSONAL AND CONFIDENTIAL
NOT FOR RELEASE OR DISCLOSURE

B.K. MacDonald
September 19, 2021

I firmly believe in the ability of God's greatest creation, human kind, to heal ourselves through means not requiring pharmaceuticals.  1 Corinthians 12:4-9 provides me guidance regarding God's gifts to humankind:  "Now there are varieties of gifts, but the same Spirit.  And there are varieties of ministries, and the same Lord.  There are varieties of effects, but the same God who works all things in all persons.  But to each one is given the manifestation of the Spirit for the common good.  For to one is given the word of wisdom through the Spirit, and to another the word of knowledge according to the same Spirit; to another faith by the same Spirit, and to another gifts of healing by the one Spirit,".  I believe gifts of healing are gifts of the Holy Spirit.

I believe in the laying of hands and the ability of healers to impact my health.  I have evolved my beliefs on western medicine's reliance on pharmaceuticals and it's rejection of God and the Holy Spirits ability to protect and heal me.  I look to 1 Corinthians 10:13 for strength and guidance: "No temptation has overtaken you except what is common to mankind.  And God is faithful; he will not let you be tempted beyond what you can bear.  But when you are tempted, he will also provide a way out so that you can endure it."  It would have been much easier to compromise my sincerely held religious beliefs, to take the COVID-19 shot, than endure the discrimination at OHSU, the hostile work environment OHSU has condoned, and the attempted violation of (and outwardly hostile response to) my religious beliefs by the State and OHSU.  I find strength in Revelations 2:10 to resist the temptation to abandon my beliefs:  " Do not be afraid of what you are about to suffer. I tell you, the devil will put some of you in prison to test you, and you will suffer persecution for ten days. Be faithful, even to the point of death, and I will give you life as your victor's crown."

Of further note, I have sent my daughters to private Christian schools for over 20 years.  I believe in the moral compass provided through the foundation of Christian beliefs.

Finally, and very personally, when our youngest daughter was in-utero, I denied medical procedures that would have jeopardized her life.  When presented with additional undue hardships associated with my pregnancy of my third daughter, I denied to undergo an abortion, putting the life of my child ahead of my own well being.  Instead, I endured the medical and

PERSONAL AND CONFIDENTIAL
NOT FOR RELEASE OR DISCLOSURE

B.K. MacDonald
September 19, 2021

mental health issues associated with my pregnancy and, through the grace of God, brought my third daughter into this world.  I am confident in God's presence with all children, born or unborn, as set forth in Jerimiah 1:5 "Before I formed you in the womb I knew you, before you were born I set you apart..."

As a nurse at OHSU, I have not refused to care for any person based on their COVID-19 vaccination status or COVID-19 test result.

## Religious Affiliation Answers

I am not actively affiliated with any organized religious organization.  I identify as Christian.  To have sincerely held religious beliefs, it is neither required under the United States Constitution nor the Bill of Rights to be a member of an Internal Revenue Service tax identified religious organization.  The First Amendment to the United States Constitution states:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  My religious beliefs, as were the beliefs of the Founders of this great Nation, are my own and not dictated to me by the government.  As President Abraham Lincoln said:  "That I am not a member of any Christian Church, is true; but I have never denied the truth of the Scriptures; and I have never spoken with intentional disrespect of religion in general, or any denomination of Christians in particular." (*July 31, 1846 Handbill Replying to Charges of Infidelity*).  It is my firm belief that Abraham Lincoln was correct.  Lincoln also relied, as do I, on faith in God for guidance:  "Nevertheless, amid the greatest difficulties of my Administration, when I could not see any other resort, I would place my whole reliance on God, knowing that all would go well, and that He would decide for the right." (*October 24, 1863 Remarks to the Baltimore Presbyterian Synod).*  In accordance with my beliefs set forth above, I have completed the third section of Question 2 as N/A.

PERSONAL AND CONFIDENTIAL                                   B.K. MacDonald
NOT FOR RELEASE OR DISCLOSURE                              September 19, 2021

**<u>Summary:</u>**

I respectfully request an exemption from the COVID-19 Vaccination Requirement as it violates my sincerely held religious beliefs, practice, and observance.  As COVID vaccines only recently became available, and OHSU has had nearly a full year to learn to operate under the threat of COVID without the use of vaccines, OHSU is already well equipped to offer reasonable accommodations without undue hardship.

# EXHIBIT "C"

**From:** Vaccine Exception Review Committee <now@ohsu.edu>
**Sent:** Thursday, October 7, 2021 2:19 PM
**To:** Brittany MacDonald
**Subject:** Your religious exception request was not approved

OHSUNOW

Dear Brittany,

OHSU has completed its review of your request for an exception to the COVID-19 vaccine requirement. Based on the information you submitted and OHSU's narrow criteria established under the law for approvals, you are **not approved for a religious exception.** This is a final decision and may not be appealed.

Please know that each review had two independent assessments by members of the Vaccine Exception Review Committee, which included representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness. These decisions were made using specific criteria established under the law to determine if your request met the long-established legal definition of any religious or medical exception.

The vast majority of these denials were because the requestor did not meet the legal requirements for a religious exception, but instead stated personal beliefs or conscientious objections as opposed to a fundamental tenet of a religious faith. Examples of beliefs that did not qualify for a religious exception include:

- Arguments for free will, religious freedom or against compulsion.
- Concerns over vaccine safety or content.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
- A personal revelation from God about the vaccine.
- An objection to the COVID vaccine based upon bodily integrity or sanctity and/or a belief that the vaccine is "unclean."

We understand this is difficult news to receive and recognize that you may have deeply held personal convictions which nonetheless do not meet the narrow legal requirements for a religious exception. **OHSU values you and hopes you will consider getting vaccinated in order to remain an OHSU member.** You can still get vaccinated, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you.

If you become partially vaccinated prior to the Oct. 18 deadline, please be sure to upload your vaccination record as soon as possible in Enterprise Health. Please also discuss with your manager your intentions regarding vaccination going forward.

As you know, any OHSU member who is not compliant with the vaccine policy by Oct. 18 cannot continue to work, study or volunteer. Specifics on what this means for you, based on your representation group or member type, is coming soon.

OHSU firmly stands behind the community benefit of vaccination against COVID-19. The decision not to get vaccinated can have negative consequences to the unvaccinated person and to those around them. While we acknowledge each individual's right to their opinion and choice about vaccination, we also need to ensure OHSU sets policy to protect our patients and our community.

Trouble reading this message?
View in a browser

# EXHIBIT "D"

**From:** OHSU Now <now@ohsu.edu>
**Sent:** Thursday, September 30, 2021 4:28 PM
**To:** Brittany MacDonald
**Subject:** An update on vaccine policy exception requests



We are reaching out today because you or someone who directly reports to you has a pending exception request to OHSU's vaccination policy.

The exception review panel is working through these requests now. However, each review is requiring a high level of individual assessment by multiple reviewers by representatives from AAEO, Center for Diversity and Inclusion, Human Resources, Legal, Occupational Health and Student Health and Wellness.

With the rigorous reviews, **it is unlikely that the committee will complete all the reviews by Saturday, Oct. 2.**

As you know, if you are not compliant with the policy by Oct. 18, you cannot work, study or volunteer at OHSU on Oct. 19.  Monday, Oct. 4, is the last day that you could get a Johnson & Johnson vaccine in time to be fully vaccinated and compliant with the policy by Oct. 18.

With this, we are sharing further detail on OHSU's narrow criteria for exception approvals to help guide your decisions. The criteria has been set to help OHSU keep our members and those we serve safe, but we also value you as a member and want to give you time to determine your next steps. The safety of our community is critical, and in the committee's preliminary reviews, **we expect very few of the submitted requests for religious exceptions to be approved.**

If you believe your request may not be approved based on the criteria below and shared on Sept. 22, we are here to help. **You can still get vaccinated**, no appointment needed, at these OHSU pharmacy locations during their open hours or you can find a community location near you. Remember to enter your vaccination record (and, confirm your information) as soon as possible in Enterprise Health as well.

If you have questions about the vaccines, email AskOHSU@ohsu.edu, and we can connect you with someone who can answer your questions. You're also encouraged to join an open Q&A forum this Friday, Oct. 1, at 11 a.m.

## Religious exceptions

In accordance with relevant federal and Oregon law, members who can demonstrate a sincerely held religious belief and past behavior consistent with that belief will be approved for an exception. Please be advised that social, political or economic philosophies or personal preferences are not considered to be religious beliefs.

Examples of beliefs that do **not** qualify for a religious exception include:

- Arguments for free will or against compulsion.
  - This does not refer to the vaccine, but instead your right to have a religious freedom or conscientiously object to the vaccine.
- Concerns over vaccine safety or content.
  - These are not religious arguments and often inconsistent with proven facts.
- An objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development.
  - These professed beliefs are personal moral choices and/or conscientious objections rather than a tenet of a religious faith.
  - No fetal tissue or cells are contained in any of the vaccines currently available under FDA approval or emergency use authorization in the U.S.
  - While they played no role in their development or production, HEK-293 cell lines created over 50 years ago were used in confirmatory testing of

the current mRNA vaccines. Cells from the same line have commonly been used in biologic research since the late 70s. This cell line is used in the testing of many common medicines, including Tylenol, Advil, Aspirin, Claritin, Benadryl, Pepto-Bismol, Mucinex, Tums and Prilosec, among many others.

- A personal revelation from God about the vaccine, an objection to the vaccine based upon bodily integrity or sanctity, and/or a belief that the vaccine is "unclean."
  - These are personal moral choices and/or conscientious objection rather than a tenet of a religious faith.

See more about the exception review criteria on O2.

## Medical exceptions

Medical exceptions will be allowed only for specific reasons consistent with guidance from the Centers for Disease Control and Prevention (CDC), including:

- Documented history of severe allergic reaction to one or more components of all three currently approved COVID-19 vaccines.
- Documented history of severe or immediate-type hypersensitivity allergic reaction to a COVID-19 vaccine, and separate contraindication to other available formulations.
- Individuals who have received monoclonal antibodies for the treatment or prophylaxis following exposure of COVID-19 for 90 days after administration.

Examples of conditions that would not qualify for a medical exception include:

- History of severe allergic reactions to foods, oral medications, latex, pets, insects and environmental triggers.
- Trypanophobia (fear of injections or needles).
- Previous history of normal vaccine side effects or general avoidance of vaccines.
- History of COVID-19 infection.
- Concerns that vaccination could exacerbate an autoimmune disorder.
- Routine requests because of pregnancy.

See more about the exception review criteria on O2.

*This message is being sent to all employees and students with a pending exception request, as well as the employees' supervisors.*

Trouble reading this message?
View in a browser

# EXHIBIT "E"


OHSU

Dec. 3, 2021

Human Resources

hrcomm@ohsu.edu

MacDonald, Brittany K
1916 NW 146th St
Vancouver, WA 98685-8008

Mail code: HR
3181 S.W. Sam Jackson Park Rd.
Portland, OR 97239

**Re: Final notice about your employment**

This letter serves as final notice that your employment with OHSU has been terminated effective Dec. 2, 2021, due to non-compliance with OHSU Policy 03-30-150 COVID-19 Immunizations and Education.

A final paycheck will be sent in a separate mailing to this address. If your net pay is zero, it's because applicable deductions offset your earnings; however, the gross earnings will be reported on your W-2 form.

If you had active benefits coverage in November, your coverage will continue through Dec. 31, 2021. Within 45 days following termination of your benefits, you will be sent an information packet about the option to continue benefits through COBRA.

Please work with your former supervisor to arrange the return of any OHSU equipment, keys, and your ID badge as soon as possible, if necessary.

Thank you for your service to OHSU and the people of Oregon. We regret losing you as an OHSU member, and wish you the very best in your future endeavors.

OHSU Human Resources

Employee ID#: 71210

# EXHIBIT "F"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
### (This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 9/30/2022

To: Mrs. Brittany K. Macdonald
1916 NW 146th Street
Vancouver, WA 98685

Re: EEOC Charge No: 551-2022-00586, Macdonald v. Oregon Health and Science University

EEOC Representative and email:    Joslyn Burchett
Investigator
joslyn.burchett@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2022-00586.

On Behalf of the Commission

_____          _____ for

September 30, 2022                          Elizabeth M. Cannon
Date                                                    Director

CC: Oregon Health and Science University

Please retain this notice for your records.

# EXHIBIT "G"

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

**Count Days**     **Add Days**     **Workdays**     **Add Workdays**     **Weekday**     **Week №**

From **Friday, September 30, 2022**
Added 90 days

## Result: Thursday, December 29, 2022

### Calendar showing period from September 30, 2022 to December 29, 2022

**September 2022**
0 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sa |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | **30** | |

**October 2022**
31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sa |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     |     |     | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

**November 2022**
30 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sa |
|-----|-----|-----|-----|-----|-----|-----|
|     |     | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

**December 2022**
29 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | **29** | 30 | 31 |

☐ = Start date (Sep 30, 2022)   ☐ = Final result date (Dec 29, 2022)



**Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

Advertising

