**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **BRITTANY MacDONALD**, | Case No. 3:22-cv-01942-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| **OREGON HEALTH & SCIENCE UNIVERSITY**, a Public Corporation and Governmental Entity; **WAYNE MONFRIES**, an Individual; **RUTH BEYER**, an Individual; **MAHTAB BRAR**, an Individual; **JAMES CARLSON**, an Individual; **DANNY JACOBS**, an Individual; **SUSAN KING**, an Individual; **CHAD PAULSON**, an Individual; **SUE STEWARD**, an Individual; **STEVE ZIKA**, an Individual; **and DOES 1-50**, Inclusive, | |
| Defendants. | |

Ray D. Hacke, Pacific Justice Institute, 317 Court St. NE, Suite 202, Salem, OR 97301. Attorney for Plaintiff.

Brenda K. Baumgart, Rachelle Collins, Alex Van Rysselberghe, and Thomas R. Johnson, Stoel Rives LLP, 706 SW Ninth Ave., Suite 3000, Portland, OR 97205. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Before this Court is a Motion to Dismiss filed by Defendant Oregon Health & Science University ("OHSU"), Wayne Monfries, Ruth Beyer, Mahtab Brar, James Carlson, Danny Jacobs, Susan King, Chad Paulson, Sue Steward, Steve Zika, and Does 1-50's (collectively, "Defendants"). ECF 22.

Plaintiff Brittany MacDonald ("Plaintiff") brings two claims against Defendants. Against Defendant OHSU, Plaintiff alleges a violation of Title VII of the 1964 Civil Rights Act based on the failure to accommodate Plaintiff's religious beliefs. ECF 1 at ¶¶ 35–49. Against Defendants Monfries, Beyer, Brar, Carlson, Jacobs, King, Paulson, Steward, Zika (collectively, "Board Defendants") and Does 1-50 (collectively, "VERC Defendants"), Plaintiff alleges violation of her First Amendment right under 42 U.S.C. § 1983. *Id.* at ¶¶ 50–58. Plaintiff seeks declaratory relief, as well as economic, non-economic, and punitive damages. *Id.* at 15–16.[1]

For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## STANDARDS

A motion brought under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New*

---

[1] Defendants move to dismiss Plaintiff's claim for declaratory relief as seeking retrospective relief and thus barred by the Eleventh Amendment. ECF 22 at 31; *see also Green v. Mansour*, 474 U.S. 64, 72–73 (1985) (finding declaratory relief inappropriate where there is neither "claimed continuing violation of federal law" nor "any threat of state officials violating [federal] law in the future.") Plaintiff does not oppose. ECF 23 at 34. Accordingly, Plaintiff's claim for declaratory relief is DISMISSED WITH PREJUDICE.

*Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## BACKGROUND

The following facts are taken from Plaintiff's Complaint. ECF 1. Plaintiff is a registered nurse formerly employed by Defendant OHSU in the hospital's Mother and Baby Unit. *Id.* at ¶¶

PAGE 3 – OPINION AND ORDER

1, 18. Plaintiff worked at OHSU for approximately nine years, from October 8, 2012 until

December 2, 2021. *Id.* Plaintiff is also a practicing Christian. *Id.* at ¶ 2.

OHSU is a public corporation and governmental entity performing governmental

functions and exercising governmental powers, as provided under O.R.S. § 353.020. *Id.* at ¶ 3.

OHSU is a public hospital system and Oregon's only public medical school. *Id.* at ¶ 12. OHSU is

also an employer as defined by Title VII. *Id.*

The Board Defendants are individuals who were collectively responsible for establishing

policies and protocols aimed at ensuring the health and safety of OHSU's employees and patients

during the COVID-19 pandemic. *Id.* at ¶ 15. The VERC Defendants, styled in Plaintiff's

Complaint as "Does 1-50, inclusive," are individuals whose identities are unknown to Plaintiff

but who were members of OHSU's Vaccine Exemption Review Committee ("VERC"). *Id.* at ¶¶

3, 5. The VERC consisted of individuals from various departments within OHSU, including

Affirmative Action and Equal Opportunity ("AAEO"), Center for Diversity and Inclusion,

Human Resources, Student Health and Wellness, Occupational Health, and Legal. *Id.* Ex. C.

In August 2021, Oregon Governor Kate Brown issued an executive order ("Vaccine

Mandate" or "Mandate") requiring healthcare workers to be vaccinated against COVID-19 by

October 18, 2021. *Id.* at ¶ 16; *see also* O.A.R. § 333-019-1010.

To comply with the Mandate, OHSU subsequently required all its employees to either be

vaccinated against COVID-19 or be granted a religious or medical exception by October 18,

2021. ECF 1 at ¶ 17; *see also* O.A.R. § 333-019-1010(3)(a) (effective August 25, 2021 through

January 31, 2022). Exemption requests were evaluated by the VERC. *Id.* Ex. C. The VERC

evaluated these requests against the legal criteria for communicating a "sincerely held religious

belief" that conflicted with OHSU's vaccine policy. *See id.* Ex. C; *id.* Ex D. Some frequently

raised personal or secular beliefs that failed to qualify as a religious exemption, according to the VERC, including "[a]rguments for free will, religious freedom or against compulsion," "[c]oncerns over vaccine safety or content," and objections based on "fetal cell concerns" that did not appear to stem from a bona fide religious belief. *Id.* Ex. C.

At the time that OHSU announced its COVID-19 vaccination policy, Plaintiff was working as a registered nurse in OHSU's Mother and Baby Unit. *Id.* at ¶ 18. Plaintiff is a practicing, non-denominational Christian who opposes abortion on religious grounds. *Id.* at ¶ 19. As such, Plaintiff objected to receiving a COVID-19 vaccination, partly on the basis that she believed the vaccine manufacturers used cells from aborted fetuses in the testing and development of vaccines or in the vaccines themselves. *Id.* at ¶¶ 20, 21.

On or about September 19, 2021, Plaintiff submitted a religious exemption request to OHSU. *Id.* at ¶ 21; *id.* Ex. B. Plaintiff attached a five-page explanation to her exemption request which outlined her objections to receiving the COVID-19 vaccine. *Id.* Ex. B. These objections included Plaintiff's statement that she "firmly believe[s] [she] [has] a clear moral duty to refuse the use of medical products, including certain vaccines, that are created using human cell lines derived from abortion during any stage of the vaccine's development, including the testing phase of development of a medical product." *Id.* Ex. B. at 4. Plaintiff further objected to receiving the vaccine based on her belief that "[her] body is the Temple of the Holy Spirit" and "as a Christian, [she] [is] compelled to protect it from defilement." *Id.* Plaintiff also stated that she was "strongly opposed to the (illegal) requirement by the State that, as a nurse, [she] must be injected with it against [her] will and against God's will." *Id.*

VERC conducted two independent assessments of Plaintiff's application and denied her request, finding her application insufficient to establish that she had a sincerely held religious

belief that conflicted with OHSU's employee-wide vaccination requirement. *Id.* Ex. C. Plaintiff remained unvaccinated, in contravention of OHSU's vaccination policy and the Mandate. OHSU ultimately terminated Plaintiff's employment on or about December 3, 2021. *Id.* at ¶ 31.

Plaintiff filed the present action on December 15, 2022. ECF 1. On March 10, 2022, Defendants moved to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). ECF 22 at 1. After the parties had fully briefed the motion, ECF 23; ECF 26, this Court held oral argument, ECF 28. Following oral argument, and at the request of this Court, the parties submitted supplemental briefing on the issue of Defendants' request for judicial notice of several documents not contained or referenced in Plaintiff's Complaint. ECF 29; ECF 30. This Court then took this matter under advisement as of May 31, 2023.

On June 29, 2023, the United States Supreme Court issued its decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023). That case considered the definition of "undue hardship" as applied to Title VII religious discrimination claims. *Id.* at 2294. This Court requested, and received, joint supplemental briefing from the parties on whether and to what extent the Supreme Court's decision in *Groff* impacts this Court's "undue hardship" analysis. ECF 32; ECF 33.

## DISCUSSION

Defendants ask this Court to dismiss both Plaintiff's Title VII claim against Defendant OHSU and Plaintiff's First Amendment claim against the Board and VERC Defendants. ECF 22 at 2. This Court considers each claim in turn.

## A. Title VII

Under Title VII, it is unlawful for an employer "to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e–2(a)(1). An employee who claims religious discrimination based on an employer's failure to accommodate their religious beliefs or practices bears the initial burden of setting forth a prima facie case of religious discrimination. *Berry v.*

*Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006). To establish this prima facie case, the employee must demonstrate "that (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Tiano v. Dillard Dept. Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (citation omitted); *see also Slater v. Douglas Cnty.*, 743 F. Supp. 2d 1188, 1191 (D. Or. 2010) (citations omitted). If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano*, 139 F.3d at 681 (citations omitted).

Defendants, in their Motion to Dismiss, fail to advance any argument regarding Plaintiff's ability to properly allege a prima facie case under Title VII. ECF 22 at 7. Accordingly, Defendants apparently concede for purposes of this motion that Plaintiff has sufficiently alleged a prima facie case under Title VII. Defendants argue that even assuming Plaintiff has alleged sufficient facts at this stage to establish a prima facie case, Defendants' motion should nonetheless be granted because allowing Plaintiff to remain in her position while unvaccinated would have created undue hardship. *Id.* at 7. Plaintiff counters that OHSU could have taken steps to ensure that, as an unvaccinated healthcare provider, Plaintiff did not contract or spread COVID-19. ECF 23 at 17. Plaintiff also argues that losing employees who were unvaccinated, rather than allowing employees to continue to work while unvaccinated, arguably posed a greater

hardship to OHSU. *Id.* at 17–18.[2] Plaintiff also argues that the COVID-19 vaccine did not reduce the risk of COVID-19 infection and transmission. *Id.* at 18. For the reasons below, this Court finds that Defendants have not, at this stage, met their burden to show as a matter of law that accommodating Plaintiff would have resulted in an undue hardship as clarified by the United States Supreme Court in *Groff*. 143 S. Ct. at 2294.

### a. Undue Hardship

An accommodation causes an "undue hardship" when the burden of the accommodation "is substantial in the overall context of an employer's business." *Id.* Recently, the Supreme Court has clarified that to constitute an undue burden, an employer must suffer more than "some sort of additional costs"; instead, the employer "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 2294–95.[3]

---

[2] Plaintiff cites to no case law, and this Court is aware of none, to support her argument that where various accommodations pose a substantial burden, the employer must choose the least burdensome among those options. If allowing employees to continue working at OHSU while unvaccinated would have resulted in a substantial burden to OHSU, it is irrelevant to this Court whether the course that OHSU ultimately chose also resulted in a substantial burden. Accordingly, this Court rejects Plaintiff's argument that OHSU should have chosen a different accommodation as irrelevant to the question of whether Plaintiff's proposed accommodation would have caused an undue hardship.

[3] Prior to the Supreme Court's clarification in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023), courts in the Ninth Circuit held that any accommodation that "results in more than a de minimis cost to the employer" created an undue hardship. *See, e.g.*, *Opuku-Boateng v. State of Cal.*, 95 F.3d 1461, 1468 (9th Cir. 1996) (emphasis omitted) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993)). In *Groff*, the Supreme Court held that "showing 'more than a de minimis cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII." *Groff*, 143 S. Ct. at 2294 (emphasis omitted). In their supplemental briefing, Defendants argue that, even under *Groff*, showing a more than de minimis cost is synonymous with showing a substantial cost. ECF 33 at 7. This Court disagrees with Defendants' interpretation, which is foreclosed by the plain language of *Groff*. *See Groff*, 143 S. Ct. at 2295 (finding that "'undue hardship' . . . means something very different from a burden that is merely more than de minimis, i.e., something that is 'very small or trifling.'") (emphasis omitted). Instead, this Court agrees with Plaintiff that, following *Groff*, a more than de minimis

To show that an accommodation would result in an undue hardship, the employer may show that the accommodation would either cause "'undue hardship on the conduct of the business" or would result in "hardship on the plaintiff's coworkers." *Opuku-Boateng v. State of Cal.*, 95 F.3d 1461, 1468 (9th Cir. 1996) (emphasis omitted) (quoting *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988); *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993)) ; *see also Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977) (stating that additional costs in the form of lost efficiency or higher wages may also constitute undue hardships).

Because undue hardship "is an affirmative defense . . . dismissal on that ground is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint or in any judicially noticeable materials." *Bolden-Harge v. Off. Of Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023) (internal quotation marks and citations omitted). Determination of whether a particular accommodation would have posed an undue hardship is a factual inquiry that "must be determined within the particular factual context of each case." *Balint*, 180 F.3d at1054; *accord. Groff*, 143 S. Ct. 2297 (describing the "undue-hardship standard" as a "context-specific standard.").

Defendants ask this Court to find that "[a]llowing an unvaccinated worker like Plaintiff to present health and safety hazards for vulnerable patients in OHSU's care would . . . create an 'undue hardship'" as a matter of law. ECF 22 at 9. Defendants advance three arguments in support of this claim. First, Defendants argue that because Plaintiff "regularly interacted with patients in person, and core functions of her job required her to be present in the hospital in

---

cost alone is no longer sufficient to show an undue hardship. ECF 33 at 2. Instead, an employer must show that the accommodation would result in substantial increased costs in relation to the conduct of its particular business. *Groff*, 143 S. Ct. at 2295.

person," no adequate accommodation could have "serve[d] as a viable substitute" to vaccination. ECF 22 at 8–9. Second, Defendants argue that because Oregon's administrative rules require healthcare employers to "take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19," allowing Plaintiff to remain in her position unvaccinated would have put OHSU out of compliance with state law, resulting in an undue hardship as a matter of law. *Id.* at 10. And third, Defendants argue that even if they had granted Plaintiff a religious exemption and allowed her to remain in her position unvaccinated, the requirement under state law that OHSU "take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19" would have created administrative costs, resulting in an undue hardship. ECF 26 at 4. This Court considers each argument in turn.

### i.   No Viable Substitute to Vaccination

Defendants first argue that given Plaintiff's role as a nurse in OHSU's Mother and Baby Unit, and the fact that her job duties required her to be in-person and interacting with vulnerable individuals such as pregnant persons and newborn babies, OHSU could not have allowed her to continue working unvaccinated. ECF 22 at 8–9. Defendants argue that "[a]bsent vaccination, there is no adequate reasonable accommodation that could serve as a viable substitute," *id.* at 9, and ask this Court to find, as a matter of law, that "making any accommodation to Defendants' vaccine policy" would have created "an undue hardship for OHSU," ECF 26 at 1.

To support this argument, Defendants cite to several cases which hold that allowing unvaccinated workers to remain in their positions—even while affording accommodations such as masking, testing, and social distancing—would create an undue hardship. ECF 22 at 9–10. But the cases to which Defendants cite were all decided either on motions for preliminary injunctions or motions for summary judgment, allowing the courts in those cases to rely on extrinsic

evidence such as declarations, expert testimony, and medical and scientific studies, in reaching

their conclusions. *See, e.g.*, *Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412,

435 (D. Mass. 2021) (relying on declarations from defendant hospital to hold, on a motion for a

preliminary injunction, that "alternatives to vaccines, such as masking, periodic testing, and

social distancing, would impose an undue hardship"); *Aukamp-Corcoran v. Lancaster Gen.*

*Hosp.*, No. 19-5734, 2022 WL 507479, at *6–8 (E.D. Pa. Feb. 18, 2022) (relying on declarations

from defendant hospital to hold, on a motion for summary judgment, that "non-medical

exemptions to mandatory vaccination programs for healthcare workers increases the risk that

vaccine-preventable disease will spread" and that "use of surgical masks is less effective at

preventing the spread of influenza in healthcare facilities than vaccination"); *Brox v. Hole*, 590

F. Supp. 3d 359, 367, 367 n.8 (D. Mass. 2022) (relying on declarations from defendant public

ferry authority to hold, on a motion for a preliminary injunction, that "the costs it would incur in

paying personnel to 'police' the faithful wearing of masks by unvaccinated employees, as well as

the costs of paying employees overtime for filling in for unvaccinated employees who test

positive for COVID-19" constitute an undue hardship); *O'Hailpin v. Hawaiian Airlines, Inc.*,

583 F. Supp. 3d 1294, 1309–10 (D. Haw. Feb. 2, 2022) (relying on a declaration from defendant

airline company to hold, on a motion for a temporary restraining order, that accommodating

unvaccinated workers would create an undue hardship); *Barrington v. United Airlines, Inc.*, 566

F. Supp. 3d 1102, 1109 (D. Colo. 2021) (relying on declarations from defendant airline

company to hold, on a motion for a preliminary injunction, that accommodating unvaccinated

workers would require the hiring of additional workers and constitutes an undue hardship);

*Robinson v. Children's Hosp. Boston*, No. 14-10263-DJC, 2016 WL 1337255, at *9–10 (D.

Mass. Apr. 5, 2016) (relying on declarations from defendant hospital as well as medical evidence

in the record to conclude, on a motion for summary judgment, that accommodating unvaccinated

workers would create an undue hardship).

Defendants also attempt to support their argument that allowing Plaintiff to remain

employed while unvaccinated would constitute an undue hardship as a matter of law by pointing

out that "countless . . . scientific authorities agree that COVID-19 vaccines work and decrease

the prevalence and spread of COVID-19." ECF 26 at 5. To support this assertion, Defendants

cite to a fact-sheet created by the Centers for Disease Control and Prevention ("CDC"), which

Defendants argue shows that COVID-19 vaccines help reduce the spread of the virus and prevent

new variants from emerging. *Id.*[4] In supplemental briefing submitted after oral argument,

Defendants argue numerous facts that are not in the record at this stage, and also ask this Court

to take judicial notice of eleven additional exhibits not attached to their initial motion.[5] *See* ECF

29, Ex. 1–11.

Unlike motions for preliminary injunctions or motions for summary judgment, this Court

is limited in the materials it may consider on a motion to dismiss. *Cervantes v. City of San

Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ("Review [on a motion to dismiss] is limited to the

complaint; evidence outside the pleadings . . . cannot normally be considered in deciding a

---

[4] Defendants cite only to an undated Centers for Disease Control and Prevention ("CDC") webpage. Defendants do not explain how this undated webpage relates to Defendants' understanding of COVID-19 vaccines in September of 2021, during the timeframe relevant to Plaintiff's claim.

[5] At oral argument, this Court ordered Defendants to provide supplemental briefing that discussed certain cases that Defendants mentioned in argument but did not cite in their initial briefing. Transcript ("TR") 5/9/2023 40:12–20. This Court did not invite Defendants to submit new exhibits for judicial notice, and declines to consider them here. Additionally, Defendants, in their supplemental briefing, continue to ask this Court to take judicial notice of these exhibits for the truth of the facts contained therein. Plaintiff disputes the accuracy of these facts. Accordingly, this Court finds it is inappropriate to take judicial notice of these exhibits for the purposes advanced by Defendants.

12(b)(6) motion.") (internal quotation marks and citation omitted). When ruling on a motion to

dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court may not consider

matters outside the pleadings—such as party declarations, medical reports, or government

websites—without converting the motion to a motion for summary judgment under Federal Rule

of Civil Procedure 56. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are

two exceptions to this rule. The first is that a court may consider by incorporation "material

which is properly submitted as part of the complaint." *Id.* at 688 (citation omitted). The second

allows a court to take judicial notice of matters of public record if the facts are not "subject to

reasonable dispute." *Id.* at 688–89; *see* Fed. R. Evid. 201(b).

Defendants, for their part, ask this Court to take judicial notice of factual statements in

CDC and U.S. Food and Drug Administration ("FDA") sources to support their argument that

"COVID-19 vaccines work and decrease the prevalence and spread of COVID-19." ECF 26 at 5;

*see also* ECF 29.[6] To do so, however, would require this Court to not only take judicial notice of

---

[6] Defendants argue that "[n]umerous [c]ourts have taken [such] judicial notice . . .
following the scientific authority of the CDC and FDA." ECF 26 at 4. In support of this
statement, Defendants cite three cases: *Williams v. Brown*, 567 F. Supp. 3d 1213 (D. Or. 2021)
(considering COVID-19 vaccine requirements in the context of a temporary restraining order);
*Kheriaty v. Regents of Univ. of Cal.*, No. SACV 21-1367 JVS (KESx), 2021 WL 6298332 (C.D.
Cal. Dec. 8, 2021) (considering COVID-19 vaccine requirements in the context of a motion for
judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)); *United States v.
Del Rosario Martinez*, 524 F. Supp. 3d 1062, (S.D. Cal. 2021) (considering COVID-19 vaccine
requirements in the context of a motion to reduce sentence).
    Of these cases, only one was decided on a similar procedural posture to the present case.
*See Kheriaty*, 2021 WL 6298332, at *3 (noting that the requirement that a court only consider
material contained in the pleadings applies equally to motions brought under 12(b)(6) and 12(c)).
In *Kheriaty*, the court took judicial notice of several CDC and FDA websites, noting that judicial
notice is permitted for "undisputed and publicly available information displayed on government
websites." *Id.* at *4 (citations omitted). The court found that the information was directly related
to the challenged vaccine requirement, as it was listed as "Related Information" in the challenged
policy. *Id.* Because the plaintiff disputed the veracity of the statements made in the documents,
however, the court ultimately took notice "of the existence of the documents but [did] not accept
the factual statements within the documents as true for the purposes of [the] motion." *Id.* In the

the existence of these authorities but assume the accuracy of the information contained therein.

*Cf. Kheriaty v. Regents of Univ. of Cal.*, No. SACV 21-1367 JVS (KESx), 2021 WL 6298332, at

*4 (C.D. Cal. Dec. 8, 2021); *see also Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 878 (N.D.

Cal. 2013) ("While matters of public record are proper subjects of judicial notice, a court may

take notice only of the authenticity and existence of a particular [record], not the veracity or

validity of its contents.") (citation omitted). Defendants do not argue that the mere existence of

these sources has relevance to Defendants' conduct or this Court's analysis. Plaintiff, in her

response to Defendants' Motion to Dismiss, disputes the accuracy of the statement that COVID-

19 vaccines are effective at preventing transmission and infection. ECF 23 at 18. As such, this

Court cannot conclude that the sources to which Defendants cite are "undisputed" and declines to

take judicial notice of the websites at this stage in the proceedings.

Accordingly, this Court finds that, at this stage, it is unable to properly consider the

extrinsic evidence on which Defendants rely to show either that there were no other viable

accommodations to Plaintiff's vaccination, or that any accommodations would have created an

undue hardship consistent with *Groff*. This Court acknowledges that, when provided with

extrinsic evidence, several courts have found that other accommodations—such as masking and

testing—created undue hardship by increasing the risk of COVID-19 exposure and transmission.

*See, e.g.*, *Together Emps.*, 573 F. Supp. 3d 435–36 (finding a likelihood of success on the merits

regarding undue hardship after considering evidence that "vaccinated individuals who become

infected with COVID-19 are at least 50% less likely to transmit infection compared to

unvaccinated people") (internal quotation marks omitted); *Aukamp-Corcoran*, 2022 WL 507479,

present case, as noted above, Defendants ask this Court to take judicial notice of these exhibits
for their truth, not for the fact of their existence.

at *6, 8 (finding undue hardship after considering evidence that "use of surgical masks is less effective at preventing the spread of influenza in healthcare facilities than vaccination"). On a more robust record, Defendants may very well be able to meet their burden to show that Defendants reasonably relied on the most up-to-date available information in formulating their vaccine policy, or that the efficacy of the COVID-19 vaccine was such that any other possible accommodation would have put the vulnerable patients with whom Plaintiff interacted daily, as well as Plaintiff's coworkers, at risk. But on the limited record before this Court, Defendants have not met that burden.

### ii.  Compliance with State Law and Undue Hardship

Defendants next argue that allowing Plaintiff to remain in her position while unvaccinated would have "put OHSU out of compliance with Oregon law, creating an additional undue hardship for OHSU." ECF 22 at 10. Defendants specifically point to an Oregon Administrative Rule ("O.A.R.") that requires "[e]mployers of healthcare providers or healthcare staff, contractors and responsible parties who grant a medical or religious exception to [Oregon's] vaccination requirement [to] take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19." O.A.R. § 333-019-1010(4); *see id.*

The Ninth Circuit has held that for employers that have neither the ability to create nor enforce the law, "an employer is not liable under Title VII [for failure to accommodate] when accommodating an employee's religious beliefs would require the employer to violate federal or state law" because "the existence of such a law establishes 'undue hardship.'" *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830–31 (9th Cir. 1999) (citing *Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1383–84 (9th Cir. 1984)).

Defendants have not shown at this stage that affording Plaintiff an accommodation would have put Defendants out of compliance with Oregon law. O.A.R. § 333-019-1010(4) is clear that a health employer may grant an employee a religious exemption from the vaccination requirement so long as the employer "take[s] reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19." O.A.R. § 333-019-1010(4). Inherent in this requirement is at least an implicit recognition that there are steps that an employer could plausibly take, in lieu of a COVID-19 vaccine, to protect workers and staff from spreading and contracting COVID-19. *See* ECF 23 at 17. As such, without extrinsic evidence that no reasonable steps were available to ensure that unvaccinated healthcare providers and healthcare staff were protected from contracting and spreading COVID-19, this Court cannot find at this stage that granting Plaintiff a religious accommodation would have automatically placed Defendants out of compliance with state law.

### iii. Obstacles to Compliance with State Law and Undue Hardship

While this Court rejects Defendants' argument that granting Plaintiff a religious accommodation would have automatically placed Defendants out of compliance with state law, this Court does find that granting Plaintiff's religious exemption *without* taking reasonable steps to prevent Plaintiff from contracting and spreading COVID-19 would have placed Defendants out of compliance with state law. *See* O.A.R. § 333-019-1010(4). The question, then, is whether Defendants have shown, at this stage, that taking such steps would have imposed a burden that is substantial in the overall context of OHSU's business such that compliance itself would have created an undue hardship. *Groff*, 143 S. Ct. at 2294.

In their briefing, Defendants generally argue that certain obstacles would have made accommodating Plaintiff's unvaccinated status an undue hardship. Defendants contend that the "time and resources" that OHSU would have had to expend "offering and enforcing other

accommodations (like providing for continuous making and testing) to satisfy" O.A.R. § 333-019-1010(4) constitutes an undue hardship. ECF 26 at 4.

Although Defendants may certainly be able to demonstrate undue hardship at a later stage in this case, this Court is limited by the procedural posture of a motion to dismiss. In cases where courts have found other accommodations to pose a substantial burden, courts considered evidence of the costs that imposing such accommodations would place on the employer. *See, e.g.*, *O'Hailpin*, 583 F. Supp. 3d at 1310–11 (citing administrative costs associated with scheduling unvaccinated flight crews on international flights, as well as the "administrative burden" of testing considering the shortage of COVID-19 tests, in finding undue hardship); *Brox*, 590 F. Supp. 3d at 367, 367 n.8 (citing "costs [the defendant] would incur in paying personnel to 'police' the faithful wearing of masks by unvaccinated employees" in finding undue hardship").

Here, Defendants make only conclusory statements about "expend[ing] time and resources" to offer accommodations other than vaccinations. ECF 26 at 4. This Court cannot say, from Defendants' statements alone, whether those costs would be substantial. Nor can this Court say whether those costs would be substantial in light of any existing precautions that Defendants might have been practicing in September 2021, when Plaintiff submitted her exemption request. This Court notes that at the time that Defendants implemented the vaccination requirement, the pandemic had been ongoing for a year, and practices such as masking, testing, and social distancing, were commonplace in Oregon. O.A.R. § 333-019-1010. Defendants present no evidence regarding the precautions that employees were required to take during the pandemic before the vaccine mandate, and whether additional precautions would have created a substantial cost in the "overall context of [Defendant's] business." *Groff*, 143 S. Ct. at 2294.

This conclusion is only strengthened by the Supreme Court's recent clarification of the undue burden standard in *Groff*, in which the Supreme Court held that in assessing whether a particular accommodation would create an undue burden, a court must consider "all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of [an] employer." *Id.* at 2295 (alteration in original) (internal quotation marks and citation omitted). This is a fact-intensive inquiry that cannot properly be decided on the limited record currently before this Court. As noted above, on a fuller evidentiary record, Defendants may be able to satisfy their burden to show that any accommodation would indeed have resulted in a substantial cost to OHSU. But Defendants have not met that burden at this stage. Defendants' motion to dismiss Plaintiff's Title VII claim is therefore DENIED.

## B. First Amendment

In addition to her Title VII claim against OHSU, Plaintiff brings a Section 1983 claim against the Board Defendants and VERC Defendants (identified as Does 1-50) for violation of her First Amendment right to free exercise of religion. ECF 1 at ¶¶ 50–58. Defendants move to dismiss this claim on the ground that the Board and VERC Defendants are entitled to qualified immunity. ECF 22 at 12, 26. For the reasons discussed below, this Court agrees with Defendants that the Board and VERC Defendants are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages . . . ." *Wood v. Moss*, 572 U.S. 744, 757 (2014); *see also Krainski v. Nev. ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified

immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (alteration in original) (internal citation omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

In determining whether an officer is entitled to qualified immunity, this Court considers: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014) (citation omitted). Where a defendant properly raises the defense of qualified immunity, "[i]t is the plaintiff who bears the burden of showing that the rights allegedly violated [are] clearly established." *Shafer v Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks omitted) (citation omitted). Finally, in determining whether qualified immunity applies to a given case, a court may consider whether the rights were clearly established before deciding whether the right was violated at all. *Pearson*, 555 U.S. at 236.

This Court find that the Board and VERC Defendants are entitled to qualified immunity, as the right to refuse a state-mandated vaccine by a healthcare worker who works in-person with vulnerable populations due to allegedly religious concerns about "fetal cells" and "bodily integrity or sanctity" was not clearly established at the time the Board and VERC Defendants denied Plaintiff's religious exemption. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (citation omitted); *see also Romero v. Kitsap Cnty.*, 931 F.2d 624, 627 (9th Cir. 1991) ("[T]he officer should prevail if the right asserted by the plaintiff was not 'clearly established' or the officer

could have reasonably believed that his particular conduct was lawful."). To answer this question, courts look to factually similar cases. *A.K.H. ex. rel. Landeros v. City of Tustin*, 837 F.3d 1005, 1013 (9th Cir. 2016) ("To determine whether [the officer] violated clearly established law, we look to 'cases relevant to the situation [the officer] confronted . . . .'") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004)).

This Court notes that, as Defendants raised the defense of qualified immunity, it is Plaintiff's burden to point to a case that shows that the right was clearly defined at the time of the alleged violation. *Shafer*, 868 F.3d at 1118. In response, Plaintiff cites over a dozen cases that she argues show that the right was clearly established. ECF 23 at 22–32. But none of these cases are sufficiently analogous to have put the government officials on notice that their conduct was unlawful in the situation they confronted.

Most of the cases cited by Plaintiff either arise under different factual contexts or involve the alleged violation of different rights from those claimed by Plaintiff. Some cases cited by Plaintiff, for instance, do not involve alleged violations of a First Amendment right to free exercise of religion. *See, e.g.*, *Ex Parte Milligan*, 71 U.S. 2, 127 (1873) (holding that it is unconstitutional to try civilians through military tribunals when civil courts are operating); *Wai v. Williamson*, 103 F. 1, 7 (C.C.N.D. Cal. 1900) (considering race-based quarantine requirements under the Fourteenth Amendment); *Jew Ho v. Williamson*, 103 F. 10, 26 (C.C.N.D. Cal. 1900) (same).

Others cited cases discuss the exercise of religion in the context of schools, which is a context entirely different from a hospital enforcing a state-wide vaccine mandate in the face of a global pandemic. *See, e.g.*, *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (holding that the First Amendment protects students from being forced to salute the American flag or say

the Pledge of Allegiance in public school); *Sch. Dist. of Abington Tp. v. Schempp*, 374 U.S. 203, 224 (1963) (holding that mandatory reading of Bible verses and prayer at public schools violates the First Amendment); *Wisconsin v. Yoder*, 406 U.S. 205, 234 (1972) (holding that the First and Fourteenth Amendments prevent a state from compelling Amish parents to cause their children, who have graduated from the eighth grade, to attend formal high school to age 16).

Other cases concern unemployment benefits, a public benefit not at issue in the present case. *See, e.g.*, *Sherbert v. Verner*, 374 U.S. 398, 410 (1963) (holding that state could not constitutionally apply eligibility provisions of unemployment compensation statute so as to deny benefits to claimant who had refused employment because of her religious beliefs); *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 720 (1981) (holding that state's denial of unemployment compensation benefits to claimant, who terminated his job because his religious beliefs, violated his First Amendment right); *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144 (1987) (applying *Sherbert* and *Thomas* to an individual who was underwent a religious conversion during the course of her employment); and *Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 830, 835 (1989) (holding that state's denial of unemployment compensation benefits to claimant, who refused a position because his religious beliefs, violated his First Amendment right).

Still other cases concern conflicts between an employee's religious beliefs and their employers, but say nothing of vaccine mandates, employees in public health settings, or the occurrence of a global pandemic. *See e.g.*, *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 890 (1991) (holding that the Free Exercise Clause permits state to prohibit sacramental peyote use). And the two most recent cases cited by Plaintiff—*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); and *Masterpiece Cakeshop, LTD. v. Colo. C.R.*

*Comm'n*, 138 S. Ct. 1719 (2018)—do not arise in the employment context at all, and instead concern a city ordinance prohibiting the ritual slaughter of animals and a cease and desist order related to a bakery's refusal to sell a wedding-cake to a same-sex couple, respectively.

Of the fourteen cases cited by Plaintiff, only *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), involves a compulsory vaccination law to prevent the spread of infectious disease. But *Jacobson* considered the constitutionality of a vaccine mandate under the Fourteenth Amendment, which protects different rights than those that Plaintiff alleges were violated by Defendants. *Id.* at 14. Additionally, the Supreme Court in *Jacobson* noted that "[t]his court has more than once recognized it as a fundamental principle that 'persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state,'" *id.* at 26 (citations omitted), which stands for the general proposition that the state can impose certain restraints, such as vaccination mandates, on individuals to ensure the health and safety of the populace at large.

While this Court finds that the cases to which Plaintiff cites clearly establish the right to free exercise of religion, none of the cases deal with the particular context in which Plaintiff's claim arose: namely, the decision to deny Plaintiff's request for a religious accommodation based on the reasons stated on her form, in the face of a state-wide vaccination mandate and global pandemic. Plaintiff argues that "a reasonable official in the OHSU Officials' position would have recognized the contours of Plaintiff's constitutionally protected religious freedoms." ECF 23 at 32. But understanding the "contours" of a right is not enough to survive a claim for qualified immunity. Instead, this Court reiterates that an inquiry into qualified immunity "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (citation omitted). As detailed above, Plaintiff has pointed to no

Supreme Court or Ninth Circuit decision involving a Free Exercise claim regarding the denial of a religious exemption to a vaccine mandate during a pandemic.

This Court recognizes that government actors may still be on notice that their conduct violates established law in novel factual circumstances in obvious or egregious cases. *See Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Giebel v. Sylvester*, 244 F.3d 1182, 1189 (9th Cir. 2001). This is not such an obvious or egregious case where, notwithstanding the lack of judicial guidance, the Board and VERC Defendants' conduct was so clearly violative of a constitutional right that they should have known their actions were unconstitutional.

Indeed, at the time that the Board and VERC Defendants were promulgating and carrying out policies meant to ensure compliance with the state's vaccination mandate, governing case law clearly held that to be entitled to constitutional protection, religious beliefs must be both "sincerely held," and "rooted in religious belief" rather than "purely secular philosophical concerns." *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (internal quotation marks omitted); *see also Yoder*, 406 U.S. at 215 ("A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief."). It was therefore not unreasonable for the Board Defendants to enact policies aimed at separating sincere religious objections from objections grounded in "[a]rguments for free will," "[c]oncerns over vaccine safety or content," or "[a]n objection to the vaccine on the basis of fetal cell concerns, either in the vaccines or in testing and development," all of which could reasonably be classified as personal, rather than religious, beliefs. ECF 1, Ex. C. Nor was it unreasonable for the VERC Defendants, under this governing case law, to reject

PAGE 23 – OPINION AND ORDER

Plaintiff's exemption request based on statements that she "firmly believe[s] in an individual's right to make their own choices in life" and "cannot, in good conscience, take the vaccine." ECF 1, Ex. B at 5.

Additionally, Plaintiff cites to no case law that would have put Defendants on notice that denying an exemption based on concerns about fetal cells used in the creation and manufacturing of the vaccine, without more, would run afoul of Plaintiff's First Amendment right to free exercise. Again, at the time of the Defendants' actions, governing case law clearly illustrated that a religious belief must be "sincerely held" to qualify for constitutional protections. *Callahan*, 658 F.2d at 683. In her exemption request, Plaintiff claimed that she had forgone receiving an abortion even when faced with medical complications during pregnancy, and refused to practice abortions on patients. ECF 1, Ex. B at 6–7; *id.* at ¶ 19. But the VERC Defendants could have reasonably viewed this as evidence of Plaintiff's sincere religious opposition to receiving and giving abortions, rather than applying to the manner in which she believed the vaccines were developed.

Accordingly, Plaintiff has failed to show that the Board and VERC Defendants acted unreasonably in light of existing precedent and the specific context of this case. The Board and VERC Defendants are therefore entitled to qualified immunity, and Defendants' motion to dismiss Plaintiff's claim against these defendants is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, ECF 22, is GRANTED in part and DENIED in part. As to Plaintiff's Title VII claim against Defendant OHSU, this Court finds that Defendants have not, at this stage, met their burden to show that granting Plaintiff's accommodation would have imposed an undue hardship. Defendants' Motion to Dismiss Plaintiff's Title VII claim is therefore DENIED. As to Plaintiff's First Amendment Claim against

PAGE 24 – OPINION AND ORDER

the Board and VERC Defendants, this Court finds that those Defendants are entitled to qualified immunity. Defendants' Motion to Dismiss Plaintiff's First Amendment Claim is therefore GRANTED, and Plaintiff's First Amendment Claim against the Board and VERC Defendants is DISMISSED with prejudice. As to Plaintiff's claim for declaratory relief, this Court finds that the requested relief is retrospective and therefore barred by the Eleventh Amendment. Defendants' Motion to Dismiss Plaintiff's Claim for Declaratory Relief is therefore GRANTED, and Plaintiff's Claim for Declaratory Relief is DISMISSED with prejudice.

The parties are ORDERED to confer and submit to this Court a limited discovery and briefing plan regarding the issue of undue hardship. This submission is due within fourteen days of the issuance of this Opinion and Order.

**IT IS SO ORDERED.**

DATED this 28th day of August, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge