Ray D. Hacke, OSB #173647
Pacific Justice Institute
P.O. Box 5229
Salem, OR 97304
Phone: (530) 917-4409
Fax: (916) 857-6902
Email: rhacke@pji.org

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRITTANY MacDONALD<br><br>        Plaintiff,<br><br>vs.<br><br>OREGON HEALTH And SCIENCE UNIVERSITY, A Public Corporation and Governmental Entity<br><br>        Defendant | Case No.: 3:23-CV-01942-IM<br><br><br>**PLAINTIFFS' ANSERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br>**[ORAL ARGUMENT REQUESTED]** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

I.      INTRODUCTION & SUMMARY OF THE ARGUMENT ........................ 1

II.     STATEMENT OF DISPUTED & UNDISPUTED MATERIAL

        FACTS ........................................................................3

        A.  About OHSU ....................................................... 3

        B.  Plaintiff was a Patient Facing Nurse in the Mother Baby Unit ...............4

        C.  The COVID-19 Pandemic ........................................ 5

        D.  OHSU Responds to the COVID-19 Pandemic ....................... 5

        E.  OHSU Implements the COVID-19
            Immunization and Education Policy ....................... 5

        F.  Work in the Doernbecher Children's Hospital MBU ............................ 6

        G.  Plaintiff's Request for an Exception to the
            COVID-19 Immunization Policy ............................ 6

III.    PROCEDURAL HISTORY ............................................6

IV.     SUMMARY JUDGEMENT STANDARD ..................................6

V.      ARGUMENT ........................................................7

        A.  Plaintiff can Meet her Burden under Title VII's Burden-Shifting
            Framework…………………………………………………………..8

        B.  Disputed Materal Fact No. 1: Whether OHSU Acted with
            Discriminatory Motives…………………………………………… ...10

        C.  Disputed Material Fact No.2: Whether Requiring Plaintiff to
            Receive a COVID-19 Vacine was Necessary to Halt the Spread of
            COVID-19 in the MBU…………………………………………………13

        D.  Disputed Material Fact No.3: Whether OHSU Would Have
            Incured Undue Hardship by Letting Plaintiff Continue to
            Work Unvaccinated in the MBU ……………………………………17

        E.  OHSU's Actions Fail Strict Scrutiny Review Under the
            First Amendment ……………………………………………………..22

VI.     CONCLUSION ........................................................24

## TABLE OF AUTHORITIES

**CASES**

*Arizona v. Mayorkas*,
    143 S. Ct. 1312, 1315 (2023) …………………………………..………………….2

*Babiy v. Ore. Health & Sci. Univ.*,
    Case No. 3:23-CV-01562-HZ, Dkt. Rpt. Nos. 1 and 10 ……………………………12

*Barrington v. United Airlines, Inc.*,
    565 F. Supp. 3d 1213, 2021 …………………………………………………...…..19

*Berry v. Dep't of Soc. Servs.*,
    447 F.3d 642, 655 (9th Cir. 2006) ……...………………………………....…….…8

*Brach v. Newsom,*
    6 F.4th 904, 931 (9th Cir. 2021) ..................................................................23

*Bolden-Hardge v. Off. Of California State Controller,*
    63 F.4th 1215, 1223 (9th Cir. 2023) ............................................................9, 13

*Burwell v. Hobby Lobby Stores Inc.,*
    573 U.S. 682, 725 (2014) ...........................................................................9

*Cain v. Cnty. of Multnomah,*
    1996 U.S. Dist. LEXIS 8185 …………………………………………….....11

*Callahan v. Woods,*
    658 U.S. 679, 686 (9th Cir. 1981) ………………………………………..…9

*Chegarnov v. Ore. Health & Sci. Univ.,*
    Case No. 3:23-CV-00281-JR, Dkt. Rpt. Nos. 1, 15, and 19 ………………...……12

*Church of Lukumi Babalu Aye v. City of Hialeah,*
    508 U.S. 520, 113 S. Ct. 2217, 124 (1993) .............................................1, 22, 23

*Chuang v. Univ. of Cal., Davis*
    225 F.3d 1115, 1123-24 (9th Cir. 2000) ................................................. 6, 11, 22

*Dahl v. Bd. of Trs. of Western Mich. Univ.,*
    15 F.4th 728, 734-35 (6th Cir. 2021) ………………………………………………23

*Davis v. Team Elec. Co.,*
    520 F.3d 1080, 1089 (9th Cir. 2008) ..............................................7, 11, 13, 22, 25

*Diocese of Brooklyn,*
    141 S. Ct. at 67-68 ……………………………………………………..…..7, 11, 23

*Dobbs v. Jackson Women's Health Org.,*
    142 S. Ct. 2228 (2022) …………………………………………………………...9

*Doe v. Bolton*,
    410 U.S. 179 (1983) ……………………………………………………………9

*Employment Div., Ore. Dep't of Human Res. v. Smith*,
    494 U.S. 872 (1991)........................................................................................1

*Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*,
    575 U.S. 768, 775 (2015) ……………………………………………....…2, 10, 12

*Frazee v. Ill. Dep't of Emp't Sec.*,
    489 U.S. 829, 832 (1989) ………………………………………………………20

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868, 210 L. Ed. 2d 137 ............................................... ...........1, 22

*Groff v. DeJoy*,
    143 S. Ct. 2279, 2294-95 (2023) …………………………………………21, 22

*Harris v. McRae*,
    448 U.S. 297 (1980) ………………………………………………...…9

*Hedum v. Starbucks Corp.*,
    546 F. Supp. 2d 1017, 1025 (D. Ore. 2008) …………………………..……..11

*Heller v. EBB Auto Co.*,
    8 F.3d 1433, 1438 (9th Cir. 1993) …………………………………………..……8

*Hittle v. City of Stockton*,
    76 F.4th 877, 880 (9th Cir. 2023) …………………………………………4, 10, 12, 23

*Hobbie v. Unemployment Appeals Bd. of Fla.*,
    480 U.S. 136, 144 (1987)] ……………………………………………….……20

*Intern. Ass'n of Machinists v. Boeing Co.*,
    833 F.2d 165, 170-71 (9th Cir. 1987) ......................................................22

*Jacobson v. Massachusetts*,
    197 U.S. 11 (1905) ..........................................................................3

*Jimenez-Mendez et al. v. Ore. Health & Sci. Univ.*,
    Case No. 3:23-CV-01190-IM, Dkt. Rpt. Nos. 1 and 11 …………………..…….12

*Keene v. City & Cnty. of San Francisco*,
    2023 U.S. App. LEXIS 11807 ………………….…………………………2, 7, 13

*Kennedy v. Bremerton Sch, Dist.*,
    142 S. Ct. 2407, 2422 (2022) ………………………………………………1, 22

*Klaassen v. Trs. Of Ind. Univ.*,
    7 F.4th at 593, 2021 ..........................................................................23

*Little Sisters of the Poor Sts. Peter & Paul Home v. Pa.*,
140 S. Ct. 2367 (2020) ………………………………………………..…..9

*Makhzoomi v. Southwest Airlines Co.*,
419 F. Supp. 3d 1136, 1155 (N.D. Cal. 2019) …………………………………11

*Matal v. Tam*,
137 S. Ct. 1744, 1757 (2017) ...............................................................................24

*McGinnis v. U.S. Postal Serv.*,
512 F. Supp. 517, 526 (N.D. Cal. 1981) …………………………………..…..9

*Meltebeke v. Ore. Bureau of Labor & Indus.*,
120 Ore. App. 273, 283 fn. 4(1993) ......................................................................2

*Montgomery v. Bd. Of Educ.*,
188 Ore. App. 63, 78 ...........................................................................................22

*Nat'l Inst. Of Family & Life Advocates v. Becerra*,
138 S. Ct. 2361, 2379 (2018) ................................................................................9

*O'Hailpin v. Hawaiian Airlines, Inc.*,
583 F. Supp. 3d 1294, 1309-10 ...........................................................................19

*Peters v. Ore. Health & Sci. Univ.*,
Case No. 3:23-CV-01536-YY, Dkt. Rpt. Nos. 1 and 10 …………………………12

*Peterson v. Hewlett-Packard Co.*
358 F.3d 599 (9th Cir. 2004) .....................................................................7, 20, 21

*Roe v. Wade*,
410 U.S. 113 (1973) ……………………………………………..……….9

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63, 68 (2020) ……………………………………………….2

*Sambrano v. United Airlines, Inc.*
2022 U.S. App. LEXIS 4347 (5th Cir. 2022) ...........................................7, 19, 20

*Torcaso v. Watkins*,
357 U.S. 488, 495-96 (1961) ……………………………………………....1

*Tiano v. Dillard Dept. Stores*
139 F.3d 679 (9th Cir. 1998) ...............................................................................8

*Trans World Airlines, Inc. v. Hardison*,
432 U.S. 63, 83 (1979)] ……………………………………………………20

*United States v. Playboy Entm't Group, Inc.*,

529 U.S 803 (2000) ............................................................................ 24

*Wade v. Univ. of Conn. Bd. Of Trs.,*
   554 F. Supp. 3d, 366, 2021 ............................................................23

*Wolf v. Buss (America) Inc.,*
   77 F.3d 914, 919 (7th Cir. 1996)] ……………………………………………11

*Zimmerman v. PeaceHealth,*
   2023 U.S. Dist. LEXIS 201874 …………………………………………………21

## STATUTES AND ADMINISTRATIVE RULES

Ore. Rev. Stats. § 353.020 ……………………………………………………………1

Oregon Admin. R 333-019-1010(3)(a) ..........................................17

Oregon Admin. R 333-019-1010(4) ...............................................21

Oregon Admin. R 333-019-1010(5)(a)............................................17

Oregon Admin. R 333-019-1010(8) ................................................17

42 U.S.C. § 2000e-2 *et seq.* (Title VII) .........................................*passim*

Fed. R. Civ. P. 56(a) .......................................................................6

# I. INTRODUCTION & SUMMARY OF THE ARGUMENT

Given Defendant OREGON HEALTH & SCIENCE UNIVERSITY's ("OHSU")

status as a government employer [see Ore. Rev. Stats. § 353.020], OHSU must operate

within the strictures of the U.S. Constitution's First Amendment when making employment

decisions affecting employees' free exercise of religion. See, e.g., *Torcaso v. Watkins*, 357

U.S. 488, 495-96 (1961) and *Kennedy v. Bremerton Sch, Dist.*, 142 S. Ct. 2407, 2422 (2022)

(*Kennedy*). The First Amendment's Free Exercise Clause "protects against governmental

hostility" toward religion – be it religion in general or specific religious beliefs – "that is

masked ***as well as overt.***" *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S.

520, 531 (1993) (*Lukumi*) (emphasis added). Accordingly, OHSU's policies concerning its

employees must be both neutral and generally applicable – otherwise, they will be subject to

strict scrutiny, meaning OHSU's policies must serve a compelling interest and infringe on no

more religious freedom than necessary to achieve OHSU's ends. *Kennedy*, 142 S. Ct. at 2422

[citing *Emp't Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872, 879 (1991) (*Smith*)],

"A government policy will not qualify as neutral if it is '***specifically directed at religious***

***practice***.'" *Id.* (cleaned up) (emphasis added) [quoting *Smith*, 494 U.S. at 878]. "A

government policy will fail the general applicability requirement … if it provides a

mechanism for individualized exemptions." *Id.* [quoting *Fulton v. City of Philadelphia*, 141

S. Ct. 1868, 1881 (2021) (*Fulton*)].

Title VII – the statute under which Plaintiff BRITTANY MacDONALD ("Plaintiff')

brought her sole remaining claim, and which applies as much to government employers as it

does to private employers – goes above and beyond the First Amendment: Title VII "gives

favored treatment to religious practices, ***affirmatively obligating*** [government] employers

Pl.'s Br. In Opposition to Def.'s Mot. for Summ. J.

1

**<u>not</u> to discharge any individual because of the individual's religious observance or practice**." *Equal Emp't Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) (*Abercrombie & Fitch*) (cleaned up) (emphasis added) [quoting 42 U.S.C. § 2000e-2(a)]. This principle applies even, if not especially, during a pandemic, when government employers may be more inclined to trample on religious freedom in the name of protecting the public. *Keene v. City & Cnty. of San Francisco*, 2023 U.S. App. LEXIS 11807 at *7 (9th Cir. May 15, 2023) (*Keene*) [quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (*Diocese of Brooklyn*)]; *see also Arizona v. Mayorkas*, 143 S. Ct. 1312, 1315 (2023) (*Mayorkas*) (Gorsuch, J., concurring).

OHSU's policy of denying holders of specific religious views exceptions from the Oregon Health Authority's ("OHA") 2021 mandate that healthcare workers be vaccinated against COVID-19 (the "Vaccine Mandate" or the "Mandate") cannot survive strict scrutiny – let alone scrutiny under Title VII – because OHSU made clear that only those with the "right" beliefs would receive religious exceptions. Decl. of Pl. Brittany MacDonald in Opposition to Def.'s Mot. for Summ. J., ¶¶ 22, 24, Exs. "H" and "I" (April 17, 2024) ("MacDonald Decl."). Moreover, OHSU let unvaccinated patients, family members, and other members of the public into OHSU's Mother Baby Unit at various times so long as they used personal protective equipment ("PPE"). *Id.*, ¶ 7.

Title VII, like the First Amendment, explicitly protects religious employees from government employers' hostility toward their faiths. *Meltebeke v. Ore. Bureau of Labor & Indus.*, 120 Ore. App. 273, 283 fn. 4 (1993) (Edmonds, J., specially concurring), *aff'd*, 322 Or. 132 (1995). Here, OHSU exhibited extreme hostility towards persons of faith, including and especially Plaintiff, whose beliefs OHSU deemed unworthy of accommodation.

MacDonald Decls., Exs. "H" and "I." The Supreme Court warned against such grave abuses

of power in the wake of an emergency more than a century ago in *Jacobson v.*

*Massachusetts*, 197 U.S. 11 (1905):

> "[I]t might be that an acknowledged power of a [state] to protect itself against an
> epidemic threatening the safety of all, might be exercised in particular
> circumstances **and in reference to <u>particular persons</u> in such an arbitrary,
> unreasonable manner**, or might go so far beyond what was reasonably required
> for the safety of the public, as to authorize or compel the courts to interfere for
> the protection of such persons." *Jacobson*, 197 U.S. at 28 (emphasis added).

*Jacobson*, 197 U.S. at 28 (emphasis added).

Via its motion for summary judgment (the "Motion," or "MSJ" when cited), OHSU

now seeks this Court's approval of its open hostility toward Plaintiff's beliefs. Because

showing such approval would undermine Title VII's purposes and set an alarming precedent

for both government employers and healthcare employers to pretextually fire religious

employees in the name of public health and safety, the Court should deny OHSU's Motion.

## II. STATEMENT OF DISPUTED & UNDISPUTED MATERIAL FACTS

### A. "About OHSU" [MSJ at 3]

Plaintiff does not dispute OHSU's statements about itself.

Plaintiff disputes OHSU's assertion that vaccination prevents infection, which is not

always true and certainly was not true with regard to COVID-19 vaccines. MSJ at 5.

Plaintiff disputes OHSU's assertion that OHSU was doing everything possible to

continue providing accessible healthcare and stay fully open, especially given that OHSU

terminated the employment of more than 240 employees who did not receive COVID-19

vaccines. Decl. of Atty. Ray D. Hacke in Opposition to Defs.' Mot. for Summ. J., Ex. "A"

(April 17, 2024) ("Hacke Decl."). This happened at a time when it was widely reported that

hospitals in Oregon were understaffed and overflowing with COVID-19 patients. *See*, e.g., Erin

Ross, *The Surge of COVID-19 Patients is Stretching Oregon Hospitals' Limits*, OPB.org

(August 21, 2021) (Ross, *Stretching Oregon Hospitals' Limits*)[1] and Andrew Jacobs, *'Nursing*

*is in Crisis': Staff Shortages Put Patients at Risk*, NYTimes.com (Aug. 21, 2021, updated Oct.

20, 2021) (Jacobs, *'Nursing is in Crisis'*).[2]

Additionally, OHSU is required to adhere to all legal requirements under Title VII,

including reasonable accommodation, even during a pandemic. *Keene*, 2023 U.S. App. LEXIS

11807 at *7. Plaintiff disputes OHSU's allegations that they "were aware of numerous patients

who avoided necessary care because they were unsure about the vaccination status of their

caregiver." MacDonald Decl., ¶ 6 ["I was never "fired" by a patient or removed from my

nursing assignment in the MBU due to my unvaccinated status"].

**B.  "Plaintiff Was a Patient-Facing Nurse in the Mother Baby Unit" [MSJ at 6]**

Plaintiff does not dispute most material facts in this section, other than to point out that

not all care provided in the Mother Baby Unit ("MBU") is "intensive." MSJ at 6.

Plaintiff worked safely and effectively in the MBU throughout the pandemic,

including the ten months before COVID-19 vaccines became available. MacDonald Decl., ¶¶

5, 10, and 28. Nothing in the record supports the supposition that Plaintiff ever contracted or

spread COVID-19 while working in the MBU. *Id.*, ¶ 28. The Court must view Plaintiff's

delivery of services in a safe and reasonable manner prior to the Mandate in a light most

favorable to Plaintiff. *Hittle v. City of Stockton*, 76 F.4th 877, 880 (9th Cir. 2023) (*Hittle*).

---

[1] Last viewed online on April 16, 2024 at https://www.opb.org/article/2021/08/21/oregon-covid-19-cases-icu-patients-hospital-delta-variant-hospitalizations/.
[2]  Last visited online on April 17, 2024 at https://www.nytimes.com/2021/08/21/health/covid-nursing-shortage-delta.html.

### C.  "The COVID-19 Pandemic" [MSJ at 7]

Plaintiff does not dispute the allegations contained in this section.

Plaintiff adds that she worked through the pandemic, and OHSU continued operations during the COVID-19 pandemic without interruption and never contracted COVID-19 despite being exposed to it early in the pandemic. MacDonald Decl., ¶¶ 5, 10, and 28.

Plaintiff is not over age 65, and new mothers (generally speaking) and babies are not over the age of 65. MSJ at 8.

### D.  "OHSU Responds to the COVID-19 Pandemic" [MSJ at 8]

Plaintiff does not dispute most material facts in this section of OHSU's Motion, other than to highlight that neither COVID-19 vaccines nor PPE provided 100 percent effective patient or employee protection against COVID-19. The risks of the pandemic were far-reaching; no preventative measure, ultimately, was a guarantee; and COVID-19 vaccines were not the "magic bullet" hoped for. Dr. Takeshi Kasain, *COVID-19 Vaccines Offer Hope, But Not a Silver Bullet*, World Health Org. (Feb. 23, 2021).[3]

Plaintiff did not ask for a change to the PPE policy, as OHSU seems to suggest. MSJ at 11.

### E.  "OHSU Implements the COVID-19 Immunizations and Education Policy" [MSJ at 11]

Plaintiff disputes that OHSU followed a "mitigation" strategy. MSJ at 11. In reality, OHSU followed an elimination policy forbidding the unvaccinated from providing patient-

---

[3] Last viewed online in April 17, 2024 at
https://www.who.int/vietnam/news/commentaries/detail/covid-19-vaccines-offer-hope-but-are-not-a-silver-bullet.

facing services that exceeded the requirements not only of the Vaccine Mandate, but also Title VII and the First Amendment. MacDonald Decl., Exs. "H" and "I."

### F. "Work in the Doernbecher Children's Hospital MBU" [MSJ at 14]

Plaintiff asserts that OHSU's statement that "many of these measures only went so far" [MSJ at 15-16] applies to both the vaccination and the unvaccinated. MacDonald Decl., Exs. "C"-"E." Plaintiff furthermore asserts that staffing challenges created by the pandemic were exacerbated by OHSU's discriminatory termination of religious employees. MSJ at 15-16.

### G. "Plaintiff's Request for an Exception to the COVID-19 Immunization Policy" [MSJ at 16]

Plaintiff does not dispute these facts.

### III. PROCEDURAL HISTORY

Plaintiff cites to OHSU's Motion and concurs with the statements therein. MSJ at 16-17.

### IV. SUMMARY JUDGEMENT STANDARD

Fed. R. Civ. P. 56(a) allows the Court to grant summary judgment **_only_** if (1) there is **_no_** genuine issue as to **_any_** material fact and (2) the movant shows it is entitled to judgment as a matter of law (emphasis added). The Court must view all evidence presented, and all inferences arising therefrom, in the light most favorable to the non-moving party – in this case, Plaintiff. *Hittle*, 76 F.4th at 880.

In Title VII cases, plaintiffs "need to produce very little evidence to overcome an employer's motion for summary judgment ... because the ultimate question can only be resolved through a searching inquiry – one that is most appropriately conducted by a factfinder, upon a full record. *Chuang v. University of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (*Chuang*). The parties' differing views concerning the danger Plaintiff supposedly

presented to mothers and babies in the MBU by remaining unvaccinated and any hardship

OHSU claims it would have suffered, whether undue or not, are issues of material fact most

appropriately decided by a jury tasked with evaluating the credibility of the witnesses

involved. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (*Davis*).

## V. ARGUMENT

Title VII "makes it unlawful for an employer 'to discharge any individual … because of

such individual's … religion.'"  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 602 (9th Cir.

2004) [quoting 42 U.S.C. § 2000e-2(a)(1)]. "The term 'religion' includes **_all_** aspects of religious

observance and practice, *as well as belief*[.]" *Id.* (emphasis added). "Title VII aimed to ensure

that employees *would **_not_** have to sacrifice their jobs to observe their religious practices*."

*Sambrano v. United Airlines, Inc.*, 2022 U.S. App. LEXIS 4347 at *21 fn. 12 (5th Cir. 2022)

(*Sambrano*), *pet. for reh'g en banc denied*, 45 F.4th 877 (2022)]; *see also Keene*, 2023 U.S.

App. LEXIS 11807 at *6 [noting a lower court's erroneous failure to consider that a city's

COVID-19 vaccine mandate presented two city employees with "a Hobson's choice: lose your

faith and keep your job, or keep your faith and lose your job"].

OHSU openly discriminated against Plaintiff by deeming Plaintiff's specific beliefs

unworthy of accommodation while deeming other individuals' beliefs worthy. MacDonald

Decl., ¶ Exs. "H" and "I." Such actions warrant strict scrutiny under the First Amendment.

*Kennedy,* 142 S. Ct. at 2422 [citing *Smith*, 494 U.S. at 879]. OHSU's actions cannot survive

strict scrutiny because its targeting of Plaintiff's beliefs is suspect. *Diocese of Brooklyn,* 141

S. Ct. at 68. Even under rational basis review, it is unclear how denying religious exceptions

to employees who, in OHSU's view, held the wrong beliefs is rationally related to OHSU's

"public mission" of "preserv[ing] the health and safety of its staff … [and] the community." MSJ at 31.

An employee who claims religious discrimination based on an employer's failure to accommodate her religious beliefs or practices bears the initial burden of setting forth a prima facie case of religious discrimination. *Berry v. Dep't of Soc. Servs.*, 447 F.3d 642, 655 (9th Cir. 2006). If the employee succeeds in establishing a prima facie case, the burden shifts to the employer to prove that it either "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Tiano v. Dillard Dep't Stores,* 139 F.3d 679, 681 (9th Cir. 1998).

In this case, it is clear that OHSU made no attempt, good-faith or otherwise, to accommodate Plaintiff's sincerely held religious beliefs, effectively disqualifying her from receiving a religious exception based on her specific beliefs before she ever applied for one. MacDonald Decl., Ex. "H." However, as illustrated below, Plaintiff can meet her burden under Title VII, while OHSU's assertions concerning undue hardship – the ultimate question in this case – must be met with skepticism at best, making summary judgment inappropriate.

## A. Plaintiff Can Meet Her Burden Under Title VII's Burden-Shifting Framework.

Under Title VII's burden-shifting framework, Plaintiff must prove three things: First, that she has a sincerely held religious belief, "the practice of which conflicts with an employment duty"; second, that she "inform[ed] the defendant employer of the belief and conflict; and third, that the defendant employer "threaten[ed] [her] with or subject[ed] [her] to discriminatory treatment[.]" *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993). Both the Supreme Court and the U.S. Court of Appeals for the Ninth Circuit have cautioned against second-guessing the reasonableness of an individual's asserted religious

beliefs. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014); *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023). While a court need not accept a plaintiff's conclusory assertions, "the burden to allege a conflict with religious belief[s] is fairly minimal." *Bolden-Hardge*, 63 F.4th at 1223.

In this case, Plaintiff has established sincerely held religious beliefs that conflicted with her employment-related duty to receive a COVID-19 well beyond a "minimal" assertion. MacDonald Decl., Ex. "G." Plaintiff provided extensive support for her beliefs from the Bible – which, while unnecessary, shows her beliefs are, in fact, religious. *Id.*; *see also Callahan v. Woods*, 658 U.S. 679, 686 (9th Cir. 1981) (*Callahan*). Plaintiff also showed a history of refusing medications that conflict with her sincerely held beliefs. MacDonald Decl., Ex. "G." On top of that, Plaintiff lost her job because of her refusal to violate her beliefs – a huge indicator that her beliefs are, in fact, sincere. *McGinnis v. U.S. Postal Serv.*, 512 F. Supp. 517, 526 (N.D. Cal. 1981) (*McGinnis*).

From the outset, OHSU – which has openly and unabashedly espoused its support of abortion rights and admittedly performs abortions at its facilities – has pooh-poohed opposition to receiving COVID-19 vaccines based on their connection to abortion as a mere "personal preference" rather than a sincerely held religious belief. MacDonald Decl., Ex. "M." However, the Supreme Court has explicitly and repeatedly recognized that anti-abortion beliefs can be, and frequently are, religious in nature. *Roe v. Wade*, 410 U.S. 113 (1973), *overruled by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022); *Doe v. Bolton*, 410 U.S. 179 (1983); *Harris v. McRae*, 448 U.S. 297 (1980); *Burwell v. Hobby Lobby Stores, Inc.,* 573 U.S. 682 (2014); *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2379 (2018) (Kennedy, J., concurring); and *Little Sisters of the Poor Sts. Peter & Paul Home*

*v. Pa.*, 140 S. Ct. 2367 (2020). The Equal Employment Opportunity Commission itself

acknowledged this when advising employers about potential religious objections to COVID-

19 vaccines. EEOC, *What You Should Know About COVID-19 and the ADA, the*

*Rehabilitation Act, and Other EEO Laws* at L.2, U.S. Equal Emp. Opportunity Comm'n (Oct.

25, 2021) (emphasis added).[4]

Plaintiff can show she informed OHSU about the conflict between her sincerely held

religious beliefs and her employment-related duty to receive a COVID-19 vaccine.

MacDonald Decl., Ex. "G." In addition, Plaintiff can show that OHSU threatened to, and did,

take adverse employment actions against her – first by placing her on unpaid leave, then firing

her. *Id.*, Ex. "I."

Construing the facts in the light most favorable to Plaintiff, as this Court must [*Hittle*,

76 F.4th at 880], the Court should resolve any doubt as to whether Plaintiff's beliefs

concerning the use of cells from aborted babies in COVID-19 vaccines are religious in favor

of finding that her beliefs are, in fact, both sincere and religious.

**B. Disputed Material Fact No. 1: Whether OHSU Acted With Discriminatory Motives**

In Title VII religious discrimination cases, the employer's motives matter above all else.

*Abercrombie & Fitch*, 575 U.S. at 773. "To survive summary judgment" in a Title VII case, a

plaintiff must only "establish that a reasonable fact-finder could conclude that ***discrimination***

─────────────────────

[4] *Available at*: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19- and-ada-
rehabilitation-act-and-other-eeo-laws (last accessed Nov. 30, 2022).

***was the <u>real</u> <u>reason</u> for the defendant's actions***." *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1025 (D. Ore. 2008) (*Hedum*) (emphasis added).

Due to employers' potential to use legitimate, non-discriminatory reasons to mask discriminatory motives, courts allow plaintiffs to "show that the [employer's] articulated reason is pretextual." *Chuang*, 225 F.3d at 1123-24. "[P]retext means a lie, specifically a phony reason for some action." *Cain v. Cnty. of Multnomah*, 1996 U.S. Dist. LEXIS 8185 at **15-16 (D. Ore. June 14, 1996) [quoting *Wolf v. Buss (America) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996)]. Asserted concerns about safety may be pretexts for discrimination, even – if not especially – during a pandemic. *See*, e.g., *Makhzoomi v. Southwest Airlines Co.*, 419 F. Supp. 3d 1136, 1155 (N.D. Cal. 2019); *Mayorkas*, 143 S. Ct. at 1315 (Gorsuch, J., concurring) [calling "fear and the desire for safety … powerful forces" that, during the COVID-19 pandemic, motivated state governments to justify repeated infringements on the right of houses of worship to hold services when other gathering places remained open] and *Diocese v. Brooklyn*, 141 S. Ct. at 67 [concerning the targeting of religious congregations in the name of protecting the public during the COVID-19 pandemic]. A plaintiff's showing of pretext on her former employer's part can overcome a showing of undue hardship. *Davis*, 520 F.3d at 1089.

A plaintiff can establish pretext either "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Hedum*, 546 F. Supp. 2d at 1025. In this case, Plaintiff can present both indirect and direct evidence of pretext on OHSU's part.

To begin with, the direct evidence: OHSU pooh-poohed Plaintiff's asserted beliefs, pre-emptively dismissing concerns about COVID-19 vaccines' connection to abortion as not being

true religious beliefs, but merely "personal preference." MacDonald Decl., Ex. "H." OHSU made this assertion even though Title VII explicitly protects "**_all aspects_** of religious observance and practice, **_as well as belief_**[.]" *Abercrombie & Fitch*, 575 U.S. at 771-72 (emphasis added) [quoting 42 U.S.C. § 2000e(j)]. For OHSU to be so openly and callously dismissive of the sincere and deeply held religious convictions that motivated Plaintiff to seek a religious exception strongly suggests religious animus on OHSU's part.

Now, for the indirect evidence: For all the stats and studies OHSU cites [MSJ at 8], its proffered assertion that accommodating Plaintiff would endanger the health and safety of employees, patients, and babies in the MBU is internally inconsistent or otherwise unbelievable. The Court need only look at multiple other cases that either once were or currently are pending before it to see that OHSU did not limit its denial of religious exceptions to employees who worked in patient-facing positions at OHSU's facilities: OHSU also consistently denied religious exceptions to employees who worked remotely. *See*, e.g., *Chegarnov v. Ore. Health & Sci. Univ.*, Case No. 3:23-CV-00281-JR, Dkt. Rpt. Nos. 1, 15, and 19; *Jimenez-Mendez et al. v. Ore. Health & Sci. Univ.*, Case No. 3:23-CV-01190-IM, Dkt. Rpt. Nos. 1 and 11 [concerning April Jimenez-Mendez and Inna Khimich]; *Peters v. Ore. Health & Sci. Univ.*, Case No. 3:23-CV-01536-YY, Dkt. Rpt. Nos. 1 and 10; and *Babiy v. Ore. Health & Sci. Univ.*, Case No. 3:23-CV-01562-HZ, Dkt. Rpt. Nos. 1 and 10. At least one or more plaintiffs in each of those cases, except for *Peters*, shared Plaintiff's religious convictions concerning COVID-19 vaccines' connection to abortion. Viewing such evidence and all inferences arising therefrom in the light most favorable to Plaintiff, as this Court must for purposes of OHSU's Motion [*Hittle*, 76 F.4th at 880], the Court may – and should – infer that it was not public health and safety that motivated OHSU, but animus toward its employees' religious convictions concerning abortion and those employees' desire not to be complicit in a practice they consider murderous.

Also rendering OHSU's position internally inconsistent and unbelievable are OHSU's repeated assertions about how accommodating Plaintiff would have created "staffing issues" and "impaired critical operations." MSJ at 2, 28, 29, and 32. Indeed, as stated *supra*, it was widely reported in 2021 that hospitals throughout Oregon were understaffed and overflowing with COVID-10 patients. *See*, e.g., Ross, *Stretching Oregon Hospitals' Limits*, *and* Jacobs, *'Nursing is in Crisis'* [noting that Oregon's then-governor, Katherine "Kate" Brown, "ordered 1,500 National Guard troops to help tapped-out hospital staff"]. It strains credulity for OHSU to assert that accommodating Plaintiff would have created staffing issues on one hand when firing Plaintiff perhaps created even bigger staffing issues.

A reasonable juror could thus find that OHSU acted out of discriminatory motives, not out of a true desire to keep patients and employees safe. *See Davis*, 520 F.3d at 1089 [noting that summary judgment motions are disfavored because jurors deserve "an opportunity to evaluate the credibility of the witnesses"]. Accordingly, the Court should deny OHSU's Motion.

**C.  Disputed Material Fact No. 2: Whether Requiring Plaintiff to Receive a COVID-19 Vaccine Was Necessary to Halt the Spread of COVID-19 in the MBU**

"Title VII bars an employer from using a 'particular employment practice that causes a disparate impact on the basis of … religion' unless the employer can show that the practice is job-related and 'consistent with business necessity.'" *Bolden-Hardge*, 63 F.4th at 1227 [quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)]. The need to halt the spread of COVID-19 did not automatically make it necessary for employers, in the healthcare industry or otherwise, to run roughshod over the religious freedoms that Title VII protects. *Keene*, 2023 U.S. App. LEXIS 11807 at *7 [quoting *Diocese of Brooklyn*, 141 S. Ct. at 68].

In this case, whether it was necessary from a business standpoint for OHSU to require Plaintiff to receive a COVID-19 vaccine – and whether other COVID-19 prevention measures,

such as masking and regular testing, would have been just as effective – is very much in dispute. OHSU argues that COVID-19 vaccines proved 94% effective in preventing infection and that the vaccine was 80% effective for frontline healthcare workers. MSJ at 12. Implicit in this argument is that the risk of infection was by no means eliminated and that 20 percent of frontline healthcare workers still got infected after receiving COVID-19 vaccines. *Id.* (emphasis added). In other words, infection with COVID-19 would not have been entirely preventable even with a 100 percent vaccination rate, meaning OHSU's 0% religious tolerance, 100% discrimination policy would not have accomplished its "mission" of protecting its employees, patients, and the community at large from COVID-19.

Confirming this is that multiple peer-reviewed studies published at or near the time the OHA issued its Vaccine Mandate showed that COVID-19 vaccines did not prevent the contraction or transmission COVID-19. *See*, e.g., Sanjay Mishra, *Evidence Mounts That People with Breakthrough Infections Can Spread Delta Easily*, National Geographic (Aug. 20, 2021) (Mishra, *Evidence Mounts*).[5] This was especially true of COVID-19's Delta variant, which OHSU calls "more deadly and contagious than previous variants." *Id.*; *see also* MSJ at 1, 8. Given COVID-19 vaccines' ineffectiveness against the Delta variant, a reasonable juror could find OHSU's assertions of its need to protect the public pretextual.

One of the studies that called COVID-19 vaccines' effectiveness into question came directly from the Center for Disease Control and Prevention (the "CDC"), the federal agency

---

[5] Last viewed on December 27, 2022 at
https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily.

whose pronouncements government entities (like the OHA) and healthcare employers (like OHSU) treated as gospel for much of the COVID-19 pandemic. *See* CDC Newsroom, *Statement from CDC Director Rochelle P. Walensky, MD, MPH, on Today's MMWR*, cdc.gov (July 30, 2021).[6] The OHA likewise acknowledged that shortly after issuing its Vaccine Mandate that "[t]here is emerging evidence that people infected with the Delta variant have similar viral loads ***regardless of vaccination status, suggesting that even vaccine breakthrough cases may transmit [the Delta] variant effectively***." MacDonald Decl., ¶ 16, Ex. "C" (emphasis added). Given OHSU's status as both a government entity and a healthcare employer, OHSU presumably either knew or should have known that vaccinating all of its employees would not necessarily prevent an outbreak. Even BioNTech, which partnered with Pfizer to manufacture one of the three COVID-19 vaccines available in the United States when the OHA issued its Vaccine Mandate, admitted it lacked proof of its vaccine's safety or efficacy. *See* BioNTech. *U.S. Securities and Exchange Commission, Form 20-F Annual Report* (March 30 2022).[7]

Many studies, in fact, showed that COVID-19 vaccines exhibited ***negative*** efficacy, meaning individuals who took them became ***more*** susceptible to contracting COVID-19. *See*, e.g., Kyle A. Beatie, *Worldwide Bayesian Causal Impact Analysis of Vaccine Administration on Deaths and Cases Associated With COVID-19: A BigData Analysis of 145 Countries*, A

---

[6] Last viewed online on May 31, 2023 at https://www.cdc.gov/media/releases/2021/s0730-mmwr-COVID-19.html.

[7] Last viewed online on May 31, 2023 at https://investors.biontech.de/static-files/50d0cafc-b2c1-4392-a495-d252f84be105.

Preprint (Nov. 15, 2021).[8]  Even a study conducted by Pfizer and BioNTech showed that more people who took COVID-19 vaccines contracted COVID-19 than unvaccinated persons who were given a placebo. *See* Pfizer and BioNTech, *FDA Briefing Document: Pfizer-BioTech COVID-19 Vaccine* 1, 42 (Dec. 10, 2020).[9]

Lastly, at the time the OHA issued its Vaccine Mandate, COVID-19 had a survival rate exceeding 99 percent. Robby Soave, *COVID-19 is Probably 99% Survivable for Most Age Groups, but PolitiFact Rated This False*, Reason.com (August 8, 2021).[10] It is also worth noting that OHSU served patients who were unvaccinated even after the OHA issued its Vaccine Mandate for healthcare workers. MacDonald Decl., ¶ 10. A reasonable juror could conclude that if OHSU was truly as interested in prioritizing the safety and health of MBU patients, employees, and community as it asserts [MSJ at 1, 6, 9, 14, 31, 35], OHSU would have required its patients to be vaccinated for the safety of its employees and other patients and not singled out employees with specific religious beliefs for discriminatory treatment.

A reasonable juror could thus find that unvaccinated OHSU employees like Plaintiff were nowhere near as dangerous to patients, staff, or the community as OHSU made them out to be. The Court should therefore deny OHSU's Motion.

---

[8] Last viewed online on May 31, 2023 at https://nzdsos.com/wp-content/uploads/2022/03/Worldwide-Bayesian-Causal-Impact-Analysis-of-Vaccine-Administration.pdf.

[9] Last viewed online on May 31, 2023 at https://investors.biontech.de/static-files/50d0cafc-b2c1-4392-a495-d252f84be105 (last visited on May 31, 2023).

[10] Last viewed online on May 31, 2023 at https://nzdsos.com/wp-content/uploads/2022/03/Worldwide-Bayesian-Causal-Impact-Analysis-of-Vaccine-Administration.pdf.

**D. Disputed Material Fact No. 3: Whether OHSU Would Have Incurred Undue Hardship by Letting Plaintiff Continue to Work Unvaccinated in the MBU**

OHSU raises a number of arguments asserting that it is entitled to a finding of undue hardship as a matter of law, based on fiction, and cites a number of non-binding decisions from both within and outside the District of Oregon in support of those arguments. MSJ at 7-11. Among the most easily dispensable of these is arguments is that "allowing Plaintiff to continue working in the MBU while unvaccinated would put OHSU out of compliance with Oregon law, creating an additional undue hardship for OHSU." *Id.* at 10. This statement is patently false: The Vaccine Mandate expressly allowed OHSU and other healthcare providers to grant religious exceptions to their employees. Ore. Admin. R. 333-019-1010(3)(a).[11] The only conditions the OHA placed upon healthcare employers who granted religious exceptions were that those providers (1) "take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19" and (2) maintain documentation of any religious exceptions they granted. *Id.*, subsections (4) and (8). The Mandate also expressly allowed healthcare employers like OHSU to provide, pursuant to Title VII, accommodations "for individuals ***unable to be vaccinated due to … a sincerely held religious belief***." *Id.*, subsection (5)(a) (emphasis added). OHSU could thus have granted Plaintiff a religious accommodation and still fully complied with the Mandate.

---

[11] The Oregon Health Authority repealed Or. Admin. R. 333-019-1010 in its entirety on June 30, 2023. *See* https://records.sos.state.or.us/ORSOSWebDrawer/Recordhtml/9549761 (last visited April 11, 2024).

On a related note, OHSU asserts that Plaintiff "was one of hundreds of employees who submitted a request for a religious exception." MSJ at 5. According to OHSU's website, in calendar year 2021 – the year in which OHSU fired Plaintiff – OHSU employed approximately 18,000 people. OHSU, *2021 Fact Book*, OHSU.edu (March 2022).[12] Assuming the truth of OHSU's assertions concerning (1) the number of religious exception requests it received [MSJ at 4, 5, and 24] and (2) the "soaring" "infection rates of [COVID-19's] deadly Delta variant" [MSJ at 1], this begs the question of what would have been the greater hardship to OHSU: Losing hundreds of employees at a time when OHSU presumably needed as many hands on deck as possible, or granting religious exceptions that would have prevented OHSU – and the MBU in particular – from being understaffed? Presented with evidence of staffing shortages at OHSU and other hospitals across Oregon [*see* Ross, *Stretching Oregon Hospitals' Limits*, and Jacobs, *'Nursing is in Crisis'*], a reasonable juror could find that OHSU's assertions of undue hardship lack credibility. MSJ at 2, 28, 29, and 32.

OHSU argues that Plaintiff "cannot reasonably dispute that COVID-19 poses a health and safety risk to MBU patients – including newborn infants and pregnant mothers – and that COVID-19 vaccination reduces the risk of infection and transmission." MSJ at 9. Actually, Plaintiff ***can*** reasonably dispute that very assertion: Studies published around the time the OHA issued its Vaccine Mandate showed that even vaccinated individuals could still contract and spread COVID-19. *See*, e.g., Mishra, *Evidence Mounts*. Those studies also showed that

---

[12] *See* https://www.ohsu.edu/sites/default/files/2022-06/2021%20Fact%20Book%20Final.pdf (last viewed on March 24, 2023).

Pl.'s Br. In Opposition to Def.'s Mot. for Summ. J.

18

the COVID-19 vaccines then available in the United States were ineffective against COVID-19's Delta variant, which OHSU describes as "deadly." *Id.*; *see also* MSJ at 1.

OHSU cites multiple airline-related to assert that letting Plaintiff remain in a patient-facing role while unvaccinated would have endangered newborns and their mothers in OHSU's Mother Baby Unit. *See* Mot. at 9-10 [citing *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309-10 (D. Haw. 2022) and *Barrington v. United Airlines, Inc.*, 565 F. Supp. 3d 1213, 2021 WL 4840855 at *4 (D. Colo. Oct. 14, 2021)]. *Sambrano*, 2022 U.S. App. LEXIS 4347, also involved an airline: In *Sambrano*, the U.S. Court of Appeals for the Fifth Circuit (the "Fifth Circuit") held that a district court wrongly denied a preliminary injunction to plaintiffs who faced "the challenging ongoing coercion of being forced to either contravene their religious convictions or lose pay indefinitely." *Id.* at *25. The Fifth Circuit found that evidence that the plaintiffs' employer presented them with such a coercive choice was sufficient to establish "irreparable harm," an element required for a preliminary injunction. *Id.*

Here, the record reflects that OHSU presented Plaintiff with an equally coercive choice: OHSU's letter rejecting Plaintiff's religious exception request states in boldfaced letters, "OHSU values you and hopes you will consider getting vaccinated in order to remain and OHSU member." MacDonald Decl., Ex. "I." This statement, at best, ignores or demonstrates extreme insensitivity toward the religious convictions that moved Plaintiff to seek a religious exception in the first place – convictions that no true religious adherent, including Plaintiff, could abandon, even if it meant keeping her job. *McGinnis*, 512 F. Supp. at 520. At worst, the statement demonstrates OHSU's hostility toward beliefs like Plaintiff's, as it shows how OHSU pressured religious employees to choose between their sincerely held

religious convictions and the promise of steady employment. Both Title VII and the First Amendment explicitly prohibit government employers from requiring their employees to make. *Keene*, 2023 U.S. App. LEXIS at *7; *Frazee v. Ill. Dep't of Emp't Sec.*, 489 U.S. 829, 832 (1989) [quoting *Hobbie v. Unemployment Appeals Bd. of Fla.*, 480 U.S. 136, 144 (1987)].

Furthermore, in *Sambrano*, the airline involved at least offered to work with employees granted religious exceptions "to determine whether a reasonable accommodation can be provided that does not create an undue hardship for [the employer] and/or does not pose a direct threat to the health or safety of others in the workplace or to the employee." *Sambrano*, 2022 U.S. App. LEXIS at *28 (Smith, Circuit J., dissenting). Implicit in OHSU's statement that it would grant few religious exception requests was that OHSU would approve some requests. MacDonald Decl., Ex. "H." If OHSU could provide reasonable accommodations to those few employees who were granted religious exceptions, it creates an issue of material fact as to why OHSU could not have accommodated Plaintiff. *Peterson*, 358 F.3d at 606. This is especially true given that Plaintiff can identify an in-hospital employee who was granted a religious exception and allowed to continue working in the MBU despite telling OHSU that her beliefs were "none of your business." MacDonald Decl., ¶ 25.

OHSU cites the Supreme Court's decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023) (*Groff*), in support of its assertion that accommodating Plaintiff's religion would have imposed an undue hardship on OHSU. MSJ at 2, 18-22. Under *Groff*, the standard for undue hardship that gets employers off the hook for failing to provide reasonable religious accommodations under Title VII is "substantial increased costs in relation to the conduct of [an employer's] particular business." *Groff*, 143 S. Ct. at 2295 [citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 83 (1979)]. The Court further stated in *Groff* that, as properly understood based on

its plain meaning, for purposes of Title VII, the term "undue hardship" "means something very different from a burden that is merely more than de minimis, *i.e.*, something that is very small or trifling." *Id.* at 2295 [quoting Black's Law Dictionary, p. 388].

Regardless, as the employer in this case, it is OHSU's burden to prove undue hardship. *Peterson*, 358 F.3d at 606. In support of its Motion, OHSU asserts that "[i]t cost significant financial resources … to provide PPE and test thousands of OHSU employees." MSJ at 10. However, the standard under *Groff* is "substantial ***additional*** costs." *Groff*, 143 S. Ct. at 2295 (emphasis added). By OHSU's own admission, "OHSU nonetheless incurred these costs" throughout the COVID-19 pandemic "to fulfill its public mission and unique responsibility" to keep Oregonians safe. MSJ at 10. In other words, even if accommodating Plaintiff would have cost OHSU ***something***, a reasonable juror could find that OHSU would not have incurred costs that were substantial or additional to what OHSU was already providing for its employees.  This is especially true given that OHSU hauled in roughly half a billion dollars in 2021. MacDonald Decl., Ex. "A."

Making OHSU's claims of undue hardship even more suspect is that OHSU raked in more than $72.5 million in federal funding through the Coronavirus Aid, Relief, and Economic Security Act ("CARES") and the America Rescue Plan Act ("ARP"). MacDonald Decl., ¶ 14, Ex. "A." A reasonable juror could find that $73 million in federal funding could offset any "substantial additional costs" OHSU might have incurred. *Groff*, 143 S. Ct. at 2295.

On top of all that, the Vaccine Mandate contemplated that it was possible for OHSU to "take reasonable steps to ensure that unvaccinated staff protected from contracting and spreading COVID-19." *See* Ore. Admin. R. 333-019-1010(4). Even assuming compliance with the Mandate improved the safety of staff and patients in the MBU – and Plaintiff by no means concedes that point – "that is not the same as proving, as a matter of law, that any accommodation … for any employee who held sincere religious objections to receiving the

Pl.'s Br. In Opposition to Def.'s Mot. for Summ. J.

21

[COVID-19] vaccine created an undue hardship." *Zimmerman v. PeaceHealth*, 2023 U.S. Dist. LEXIS 201874 at *24 (W.D. Wash. Nov. 9, 2023).

Even granting that some courts outside the Ninth Circuit found undue hardship in cases involving healthcare employers [MSJ at 25-26], the existence of undue hardship is a fact-specific inquiry. *Groff*, 143 S. Ct. at 2294. In other words, healthcare employers – including OHSU – should not automatically get a pass for failing to provide reasonable accommodations to employees unable to receive COVID-19 vaccines for religious grounds. *Id.* The question of whether OHSU would have incurred undue hardship to accommodate Plaintiff under Title VII is the "ultimate question" in this case, one best left for a jury to decide. *Davis*, 520 U.S. at 1089 [quoting *Chuang*, 225 F.3d at 1124]. Accordingly, the Court should deny OHSU's Motion.

**E. OHSU's Actions Fail Strict Scrutiny Review Under the First Amendment.**

The Ninth Circuit has held the religious accommodation requirements of Title VII to be to be a constitutional entitlement. *Int'l Ass'n of Machinists v. Boeing Co.*, 833 F.2d 165, 170-71 (9th Cir 1987), *cert den*, 485 U.S. 1014 (1988); *Montgomery v. Bd. of Educ.,* 188 Ore. App. 63, 78 (2002). As stated *supra*, a governmental policy must be both neutral ***and*** generally applicable. *Kennedy*, 142 S. Ct. at 2422 (emphasis added).

In this case, OHSU policy prohibited employees from engaging in direct, in-person patient care unless approved by OHSU's President or a designee. MSJ at 13. The policy went beyond the requirements of the OHA's Vaccine Mandate, allowing OHSU to exclude from receiving religious exceptions those whose beliefs it deemed unworthy. OHSU's interest is not compelling if it allows for some unvaccinated to remain, making OHSU's policy neither neutral nor generally applicable. *Lukumi*, 508 U.S. at 544-45.

The Court must analyze the COVID-19 vaccine requirement through the lens of "strict scrutiny." *Fulton*, 141 S. Ct. at 1881. That manner of scrutiny requires OHSU to show that its failure to exempt certain employees – and not others – from the OHA's Vaccine Mandate serves "'interests of the highest order" and is narrowly tailored to achieve those interests." *Id.* (citation omitted). OHSU's interest in fighting COVID-19 is, admittedly, compelling. *See Diocese of Brooklyn*, 141 S. Ct. at 67. But OHSU's actions fail the narrow tailoring prong: For one, public health measures are not narrowly tailored if they allow exemptions or carve-outs. *Id.*; *see also Lukumi*, 508 U.S. at 544-45 [comparing the risks posed by ritual animal slaughter, hunting, and garbage disposal]. That is the case here, where OHSU singled out employees with specific religious beliefs for denial of religious exceptions. MacDonald Decl., Exs. "H" and "I." Based on such targeting, OHSU's policy unquestionably fails the First Amendment's neutrality requirement. *Kennedy*, 142 S. Ct. at 2422 [quoting *Smith*, 494 U.S. at 879].

Next, narrow tailoring is unlikely if OHSU's conduct is "more severe" than that of other institutions. *Brach v. Newsom*, 6 F.4th 904, 931 (9th Cir. 2021). To that point, several other hospitals, including Plaintiff's current employer, granted exemptions from their COVID-19 mandates. MacDonald Decl., ¶¶ 31-33, Ex. "K"; *see also*, e.g., *Klaassen v. Trs. Of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021); *Wade v. Univ. of Conn. Bd. of Trs.*, 554 F. Supp. 3d, 366 (D. Conn. 2021); *Dahl v. Bd. of Trs. of Western Mich. Univ.,* 15 F.4th 728, 734-35 (6th Cir. 2021). Plaintiff currently works for a hospital that, having granted her a religious exception, has presumably taken such steps. MacDonald Decl., ¶ 33. If Plaintiff's current employer could accommodate Plaintiff without incurring substantial additional costs, the Court may – and, for purposes of OHSU's Motion, must [*see Hittle*, 76 F.4th at 880] –

reasonably infer that OHSU could, too. A reasonable juror could likewise infer that OHSU could have reasonably accommodated Plaintiff without incurring substantial increased costs and simply chose not to, opting to unlawfully fire Plaintiff instead.

"When a plausible, less restrictive alternative is offered to a … restriction" that would otherwise violate the First Amendment, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals." See *United States v. Playboy Entm't Group, Inc*., 529 U.S 803, 816 (2000) (*Playboy*). On this record, OHSU has not established – and cannot establish – that its COVID-19 vaccination requirement was the least restrictive, if not only, means of achieving its compelling interest in stopping the spread of COVID-19. Furthermore, the Court "should not assume a plausible, less restrictive alternative would be ineffective[.]" *Playboy*, 529 U.S. at 824. The different approaches taken for employees with different religious beliefs, different exemptions (religious and medical), and allowance into the MBU by non-patient facing employees, and unvaccinated patients/visitors undermines OHSU's position that its hostile and overly restrictive policy was necessary to achieve its compelling interest, and the least restrictive means to accomplish said interest.

## VI.    CONCLUSION

OHSU may, as a government entity, openly and staunchly espouse its support of abortion rights, but it may not discriminate against those who disagree. *Matal v. Tam*, 137 S. Ct. 1744, 1757 (2017); *see also Smith*, 494 U.S. at 877 [declaring that "(t)he government … may not punish the expression of doctrines it" deems harmful]. Plaintiff has shown that issues of material fact remain in both the prima facie case prong and the undue burden/hardship prong of the Court's required analysis. As such, summary judgment is improper when and where all facts are viewed in a light most favorable to Plaintiff.

Furthermore, the Ninth Circuit has "emphasized the importance of ***zealously guarding an employee's right to a full trial***" in Title VII cases, "since discrimination claims are ***frequently difficult to prove without a full airing of the evidence*** and an opportunity to evaluate the credibility of the witnesses." *Davis*, 520 F.3d at 1089 (emphasis added). To ensure that Plaintiff's right to a full trial remains zealously guarded and jurors have a chance to evaluate witnesses' credibility, the Court should deny OHSU's Motion.

Dated: April 17, 2024

Respectfully submitted,
PACIFIC JUSTICE INSTITUTE
*/s/ RAY D. HACKE*
Ray D. Hacke
Attorneys for Plaintiff
BRITTANY MacDONALD

## PROOF OF SERVICE

I am employed in the County of Marion, State of Oregon.  I am over the age of eighteen and not a party to the within action; my business address is 317 Court St. NE Ste. 202, Salem, OR 97301.

On April 17, 2024, I served the following documents on the interested parties by placing a true copy thereof enclosed in sealed envelope(s) addressed to said parties:

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF ATTORNEY RAY D. HACKE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF PLAINTIFF BRITTANY MacDONALD IN OPPOSTION IN OPPOSTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### PLEASE SEE ATTACHED SERVICE LIST

  X    BY MAIL:  I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.  Under that practice, it would be deposited with the U.S. postal service on that same date with postage thereon fully prepaid at Salem, Oregon in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

            BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the office of the addressee(s).

  X   BY ELECTRONIC MAIL: I caused such documents to be served on the interested parties via electronic mail and through the court's ECF website.

            (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  X    (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 17, 2024, at Salem, Oregon

*/s/ LAUREN PEFFERLE*
Lauren Pefferle

## SERVICE LIST

**Via Mail:**

Tom R. Johnson, OSB No. 010645
E-mail: tom.johnson@stoel.com
Alex Van Rysselberghe, OSB No. 174836
E-mail: alex.vanrysselberghe@stoel.com
Brenda K. Baumgart, OSB No. 992160
E-mail: brenda.baumgart@stoel.com
Stoel Rives LLP
760 SW Ninth Ave., Suite 3000
Portland OR 97205