THOMAS R. JOHNSON, Bar No. 010645
tom.johnson@stoel.com
BRENDA K. BAUMGART, Bar No. 992160
brenda.baumgart@stoel.com
ALEX VAN RYSSELBERGHE, Bar No. 174836
alex.vanrysselberghe@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BRITTANY MACDONALD,<br><br>             Plaintiff,<br><br>    v.<br><br>OREGON HEALTH AND SCIENCE UNIVERSITY, a public corporation and governmental entity; WAYNE MONRIES, an individual; RUTH BEYER, an individual; MAHTAB BRAR, an individual; JAMES A. CARLSON, an individual; DANNY JACOBS, an individual; SUSAN KING, an individual; CHAD PAULSON, an individual; SUE STEWARD, an individual; STEVE ZIKA, an individual; and DOES 1 through 50, inclusive,<br><br>             Defendants. | Case No.:  3:22-cv-01942-IM<br><br>**REPLY IN SUPPORT OF DEFENDANT OREGON HEALTH AND SCIENCE UNIVERSITY'S MOTION FOR SUMMARY JUDGMENT**<br><br>ORAL ARGUMENT REQUESTED |

## I.   INTRODUCTION

OHSU's Motion for Summary Judgment raises just one narrow issue: whether OHSU would have suffered an undue hardship by allowing Plaintiff, a registered nurse in OHSU's

Page 1 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

123161381.2 0027345-00081

Mother Baby Unit ("MBU"), to continue working while unvaccinated against COVID-19. Despite this, Plaintiff addresses numerous topics that are *not* at issue—whether Plaintiff violated the First Amendment, whether Plaintiff can establish a prima facie case under Title VII of the Civil Rights Act of 1964 ("Title VII"), and whether OHSU had discriminatory motives in denying Plaintiff's request for a religious accommodation.

None of those arguments provides a basis for rejecting OHSU's undue hardship arguments. Ultimately, regarding undue hardship, Plaintiff disputes relatively few facts. And what little she does dispute—namely, that COVID-19 vaccines are effective in reducing infection and transmission of COVID-19—she fails to support with evidence capable of raising a genuine issue of material fact. Since Plaintiff now has had ample opportunity through limited discovery to adduce evidence that could allow her to survive summary judgment, and has failed to do so, the Court should grant summary judgment in OHSU's favor and dismiss Plaintiff's case with prejudice.

## II.     ARGUMENT

### A.     Most of Plaintiff's arguments are irrelevant to undue hardship.

Although OHSU's Motion for Summary Judgment concerns only undue hardship, Plaintiff's briefing addresses several other irrelevant issues. For instance, a theme throughout Plaintiff's opposition is that OHSU violated the First Amendment. *See* Plaintiff's Response in Opposition to Motion for Summary Judgment, ECF No. 65 ("Opposition" or "Opp.") at 1–2, 6, 7, 20, 22–24. This argument apparently arises from Plaintiff's Second Cause of Action, *see* Complaint, ECF No. 1 ¶¶ 50–58, which was dismissed with prejudice by this Court on August 28, 2023, *see* Opinion and Order, ECF No. 35 at 18–24. However, whether OHSU violated the First Amendment involves a different analysis than whether OHSU violated Title VII by failing

Page 2 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

to accommodate Plaintiff's religious beliefs. *Compare Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998) (setting out elements of a Title VII accommodation claim, including that the plaintiff establish a prima facie case and that the employer cannot establish undue hardship), *with Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) (setting out elements of a First Amendment Free Exercise claim, including whether a government policy is neutral and generally applicable, and applying either "strict scrutiny" or "rational basis" review depending on the policy's neutrality and general applicability). Plaintiff, moreover, cannot use her Title VII claim as a back door for consideration of her dismissed First Amendment claim. The Court should accordingly disregard Plaintiff's arguments under the First Amendment.

Plaintiff also asserts she can establish a prima facie case for her Title VII accommodation claim. *See* Opp. at 8–10. But her prima facie case is not disputed for the limited purposes of OHSU's Motion for Summary Judgment, which concerns only undue hardship. *See Tiano*, 139 F.3d at 681 (explaining that the employer holds the burden to establish undue hardship only where the plaintiff has established a prima facie case). Thus, Plaintiff's arguments about her prima facie case do not help her.

Finally, Plaintiff insists that OHSU exhibited "extreme hostility" toward her religion and "[a]cted [w]ith [d]iscriminatory [m]otives." *See* Opp. at 1–3, 10–13, 19. Plaintiff seems to suggest that OHSU's alleged motives alone may preclude summary judgment, regardless of whether an accommodation would create an undue hardship for OHSU. *Id.* That is wrong. A Title VII accommodation claim does not turn on whether an employer acted with discriminatory intent. *See Tiano*, 139 F.3d at 682 (elements of Title VII accommodation claim include (1) whether Plaintiff can establish a prima facie case by proving that (a) "she had a bona fide

Page 3 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

religious belief, the practice of which conflicted with an employment duty," (b) "she informed her employer of the belief and conflict," and (c) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements," and (2) whether the employer can show "either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship"). Plaintiff, critically, cites no case holding that the existence of "discriminatory motives" trumps Title VII's provision that employers need not accommodate an employee's religious practice if doing so would impose an undue hardship. 42 U.S.C. § 2000e(j).[1] Thus, the Court should disregard Plaintiff's assertions about OHSU's supposedly discriminatory motivation.

### B. Most of OHSU's evidence establishing undue hardship is undisputed.

Insofar as Plaintiff addresses undue hardship, Plaintiff declines to dispute most material facts. She does not dispute that COVID-19 is contagious and can cause severe outcomes, including hospitalization, long-COVID, and death. Amended Declaration of Alex Van Rysselberghe, Ex. 1, Expert Report of Dr. Seth Cohen, ECF No. 61-1 ("Cohen Rep.") ¶¶ 16, 19–21. She does not dispute that she, an MBU nurse, routinely had close physical contact with

---

[1] The cases Plaintiff cites, *see* Opp. at 10–13, do not involve accommodation claims but rather involve disparate treatment or other claims in which discriminatory intent is a factor. *E.g.*, *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1025 (D. Or. 2008) (involving religious disparate treatment and retaliation claims); *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000) (involving disparate treatment claim); *Cain v. County of Multnomah*, No. 94-466-FR, 1996 WL 328719, at *6 (D. Or. June 14, 1996) (involving race disparate treatment claim); *Makhzoomi v. Sw. Airlines Co.*, 419 F. Supp. 3d 1136, 1155 (N.D. Cal. 2019) (involving 42 U.S.C. § 1981 discrimination claim); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17–18 (2020) (involving First Amendment Free Exercise Clause claims); *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (2008) (involving disparate treatment, retaliation, and hostile work environment claims).

patients (including recently pregnant mothers), who were vulnerable to COVID-19. Declaration of Molly Blaser, ECF No. 59 ("Blaser Decl.") ¶¶ 13–18, 22. She does not dispute that many patients had COVID-19. *See* Declaration of Brittany MacDonald, ECF No. 66 ("MacDonald Decl.") ¶¶ 7, 15. She does not dispute that masking, testing, social distancing, and similar protective measures are imperfect measures of protecting against COVID-19 and are subject to human error. Declaration of Dr. Marcel Curlin, ECF No. 58 ("Curlin Decl.") ¶¶ 39–40; Cohen Rep. ¶¶ 35–37.

Plaintiff further does not dispute that OHSU is a public leader in Oregon healthcare, science, medicine, and public health, and has state-mandated responsibilities going beyond that of ordinary healthcare providers. Declaration of Renee Edwards, ECF No. 57 ("Edwards Decl.") ¶¶ 6–14. She agrees that, in 2021, OHSU was experiencing significant staffing shortages and faced challenges maintaining operational capacity. Curlin Decl. ¶ 26; Blaser Decl. ¶¶ 31, 36. And she does not dispute that OHSU was legally, ethically, and societally bound to take steps to protect patients, workers, and the community from COVID-19. *E.g.*, Curlin Decl. ¶¶ 22, 25.

Finally, although Plaintiff contests certain facts about COVID-19 vaccines (discussed below), she does not contest that vaccines are effective in some ways. She does not dispute that COVID-19 vaccines significantly reduce severe and critical outcomes of COVID-19. Cohen Rep. ¶¶ 23–24. She does not dispute that COVID-19 vaccines reduce the length of time in which one is ill with COVID-19. *Id.* ¶ 25. She also does not dispute that vaccination reduces the chance that a vaccinated person develops long-COVID symptoms, including specifically among healthcare personnel. *Id.* ¶ 23.

Ultimately, Plaintiff's arguments concerning undue hardship arise primarily from one core factual disagreement with OHSU: that the science in 2021 showed that COVID-19 vaccines

Page 5 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

prevented infection and spread of COVID-19. Plaintiff argues that a "reasonable juror could . . . find that unvaccinated OHSU employees like Plaintiff" were not more "dangerous to patients, staff, and the community" than vaccinated employees, such that employing an unvaccinated nurse in the MBU would not be an undue hardship for OHSU. Opp. at 16. The question on summary judgment, then, is whether Plaintiff has successfully raised a genuine dispute of material fact on this issue. Fed. R. Civ. P. 56(a).

Critically, Plaintiff's mere disagreement about COVID-19 vaccines, by itself, is not enough to justify denying summary judgment. Plaintiff must establish not just a "dispute" of fact, but a "genuine" dispute—that is, "more than . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 803 F.3d 1084, 1088 (9th Cir. 2015). That requires "supporting" Plaintiff's assertions by "citing to particular parts of materials in the record," including "depositions, documents, . . . or declarations," or otherwise "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for" Plaintiff, "there is no genuine issue for trial." (cleaned up)). As discussed below, although Plaintiff may superficially disagree with OHSU that COVID-19 vaccines are effective at reducing infection and spread of COVID-19, she fails to "cit[e] to particular parts of materials in the record" supporting her assertions or otherwise show "that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The Court should accordingly grant summary judgment.

### C. Plaintiff fails to raise a "genuine" dispute of material fact concerning the efficacy of COVID-19 vaccines.

OHSU has presented abundant evidence that there was a consensus of credible scientific research in 2021 that COVID-19 vaccines were effective at significantly reducing COVID-19 infection and transmission. *See generally* Cohen Rep.; Curlin Decl. OHSU's evidence—presented through two qualified medical doctors, Doctors Seth Cohen and Marcel Curlin,[2] and based on copious peer-reviewed scientific research—shows not just that COVID-19 vaccines are effective, but that they are the *single most effective* tool available for protecting against COVID-19. Curlin Decl. ¶ 29; Cohen Rep. ¶ 34. Further, vaccines provide different protection than PPE and similar measures, such that other measures cannot substitute for vaccination. Curlin Decl. ¶¶ 29, 38–41; Cohen Rep. ¶¶ 33–38.

Plaintiff's position regarding undue hardship is, at bottom, that OHSU's expert evidence is simply wrong. Indeed, it is worth pausing to recognize the significance of that position: Plaintiff does not purport to dispute merely another person's recollection of historical facts or another person's lay opinion testimony on a matter of common experience—rather, she purports to dispute *scientifically accepted fact*, which is based on copious research and analysis and is agreed upon by countless highly qualified experts in numerous fields of medicine. Accordingly, to raise a "genuine dispute" of fact, Plaintiff faces (to put it mildly) an uphill battle. She must identify evidence in the record capable of convincing a reasonable juror that OHSU's abundant expert evidence concerning COVID-19 vaccines is wrong. *Matsushita*, 475 U.S. at 587.

Plaintiff wholly fails to meet this difficult task. Critically, she offers no testimony by any qualified doctor, scientist, or similar expert to corroborate her views about COVID-19 vaccines.

---

[2] Plaintiff does not challenge the qualifications and expertise of Doctors Cohen and Curlin.

Page 7 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

She instead cites merely a handful of materials she apparently found on the Internet, which, in her lay opinion, raises doubts about the efficacy of COVID-19 vaccines. *See* Opp. at 14–16. For many reasons, these online materials do not raise a genuine dispute of material fact for trial.

        **1.    Plaintiff's online materials are not admissible evidence capable of raising a genuine dispute of material fact.**

For one, Plaintiff lacks foundation to rely on the online materials cited in her opposition to summary judgment. The materials concern scientific facts about COVID-19 vaccines and are thus "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701(c). Thus, Plaintiff may present such materials only through the testimony of an expert. *Id.* 701, 702. But Plaintiff has not provided OHSU with any expert reports under Federal Rule of Civil Procedure 26(a)(2), and she does not identify any expert in her opposition to OHSU's Motion for Summary Judgment. This renders her online materials inadmissible at trial and, accordingly, inconsequential at summary judgment. *See* Fed. R. Civ. P. 56(c)(2) (permitting a movant on summary judgment to "object that the material cited to . . . dispute a fact cannot be presented in a form that would be admissible in evidence").

Relatedly, Plaintiff's online materials are inadmissible hearsay. *See* Fed. R. Evid. 801(a), (c) (defining hearsay as out-of-court statements offered for the truth of the matter asserted). None meet any exception to the hearsay rule provided in Federal Rules of Evidence 803 and 804. Although Federal Rule of Evidence 803(18) creates a hearsay exception for "statements in learned treatises, periodicals, or pamphlets," such evidence must, again, be presented by an expert to qualify for such exception. Fed. R. Evid. 803(18)(A), (B). Since Plaintiff offers no such expert, this exception is inapplicable.

### 2. Plaintiff's online materials do not refute OHSU's evidence concerning COVID-19 vaccines.

In any event, Plaintiff's online materials do not refute OHSU's expert evidence about vaccines. Most materials concern one very specific data point: the "viral load" of vaccinated persons. The materials generally suggest that vaccinated persons infected with COVID-19 may have similar viral loads as unvaccinated persons, purportedly indicating that infected vaccinated persons are just as infectious as infected unvaccinated persons. *E.g.*, Sanjay Mishra, *Evidence Mounts That People with Breakthrough Infections Can Spread Delta Easily*, National Geographic (Aug. 20, 2021); CDC Newsroom, *Statement from CDC Director Rochelle P. Walensky, MD, MPH, on Today's MMWR*, cdc.gov (July 30, 2021); MacDonald Decl. Ex. C (Oregon Health Authority Temporary Administrative Order PH 34-2021). According to Plaintiff, this establishes that COVID-19 vaccines are ineffective at reducing infection and spread of the virus. Opp. at 14–15.

Plaintiff is simply wrong. A vaccinated person's viral load is far from the only metric relevant to transmissibility of the virus and the efficacy of COVID-19 vaccines. Critically, Plaintiff's materials about viral loads all concern the viral loads of vaccinated persons *who have already suffered an infection of COVID-19*. They do not examine whether vaccines help prevent initial infection. That distinction is key, as COVID-19 vaccines' efficacy stems primarily from its effectiveness at preventing initial infection (which, among other things, reduces spread of COVID-19 by causing fewer people carry the virus in the first place). *See* Cohen Rep. ¶ 24 ("High vaccination rates also have the benefit of reducing overall transmission risk. This is in part because people who are vaccinated are less likely to become infected in the first place."). Thus, Plaintiff's materials discussing "viral load" do not refute OHSU's evidence concerning the efficacy of COVID-19 vaccines.

Page 9 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's other materials are, with due respect, not serious science. For example, Plaintiff makes the incredible assertion that COVID-19 vaccines are not just ineffective, but *cause* COVID-19, based on an article published on the Internet by a graduate student in political science (specifically, in "corruption studies") at the University of Calgary in Canada. *See* Kyle A. Beatie, *Worldwide Bayesian Causal Impact Analysis of Vaccine Administration on Deaths and Cases Associated with COVID-19: A BigData Analysis of 145 Countries*, a preprint (Nov. 15, 2021). Beattie's article, at bottom, highlights a high prevalence of COVID-19 in countries with high vaccination rates and compares that trend to a low prevalence of COVID-19 in countries with low vaccination rates. From those trends, Beattie concludes that COVID-19 vaccines cause COVID-19 (or at least contribute to its spread). It is not difficult to spot the flaw in Beattie's methodology: he conflates correlation with causation, and further makes no effort to examine other potential causes of the high prevalence of COVID-19 in certain countries. It is thus unsurprising that Beattie's article has not been published in a peer-reviewed journal, or that other researchers (especially those with proper qualifications) have not corroborated his findings. This evidence would not lead a reasonable juror to find in Plaintiff's favor at trial.[3]

### D. Plaintiff's other arguments concerning undue hardship are meritless.

Plaintiff's remaining points about undue hardship fall flat. For example, Plaintiff repeatedly emphasizes that, even if COVID-19 vaccines reduce *some* infections and transmissions, they do not reduce *all* infections and transmissions. Opp. at 13–14. But this

---

[3] Plaintiff also makes broad claims that BioNTech and Pfizer have "admitted" that COVID-19 vaccines are ineffective and that "more people who took COVID-19 vaccines contracted COVID-19 than unvaccinated persons who were given a placebo." Opp. at 15–16. But while Plaintiff purports to support these claims by citing BioNTech's Form 20-F Annual Report filed with the United States Securities and Exchange Commission, she fails to correctly cite any page within the 700-page document that actually contains the statements alleged.

Page 10 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

misses the point. OHSU has never claimed that COVID-19 vaccines are 100% effective, nor must OHSU claim that vaccines are 100% effective to establish that unvaccinated nurses would create very real safety risks to patients and coworkers as compared to vaccinated nurses. It is more than enough to demonstrate that COVID-19 vaccines significantly reduce infections. Indeed, OHSU has shown that the vaccine reduces as much as 80% of COVID-19 infections among healthcare workers, and that unvaccinated persons during the Delta surge were at least three times more likely to be infected with COVID-19. These are significant reductions, translating to real differences in how many patients and employees get sick (and, later, how many experience severe and critical outcomes). As a hospital with a public mandate to provide exemplary healthcare and serve as a leader among Oregon healthcare providers, it certainly would be an undue hardship for OHSU to subject patients, employees, and community members to preventable risks of COVID-19 infection. Curlin Decl. ¶ 16 ("Even one preventable patient infection was unacceptable and would violate our public mission and purpose, not least our Hippocratic obligation to 'do no harm.'"); *accord* Edwards Decl. ¶ 21; *see Groff v. DeJoy*, 600 U.S. 447, 471 (2023) ("undue hardship" examines what is "substantial *in the context of an employer's business*" (emphasis added)).

Plaintiff next suggests that accommodations may have been available to her in the MBU, based on her claim that a "house keeper" at OHSU reportedly received an accommodation and, further, that Plaintiff was later allowed to work unvaccinated at a different hospital. Opp. at 20, 23; MacDonald Decl. ¶¶ 25, 29–35. But these facts do not raise a genuine dispute about whether OHSU could reasonably accommodate Plaintiff. For one, Plaintiff's claims about the housekeeper employee are unsubstantiated hearsay, and thus not admissible evidence sufficient to support denial of summary judgment. Fed. R. Evid. 801, 802; Fed. R. Civ. P. 56(c)(2). In any

Page 11 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

event, whether accommodations were available for housekeeping employees says nothing about whether accommodations were available for patient-facing nurses in the MBU. Moreover, as OHSU argued in its opposition to Plaintiff's Motion to Compel, ECF No. 44 at 9–10, the fact that another hospital let Plaintiff work unvaccinated does not prove that such accommodation was not an undue hardship for that hospital. Any organization may choose to provide an accommodation even though doing so would constitute a hardship. Additionally, what is an undue hardship for one organization is not necessarily an undue hardship for another organization. Even if Plaintiff's subsequent employer did not suffer hardship by allowing her to work unvaccinated, that does not necessarily mean OHSU could do the same.

Finally, Plaintiff suggests that the costs associated with accommodating Plaintiff were not "substantial" or "additional" compared to what OHSU was already spending on employee protections in general. Opp. at 27–28. But Plaintiff ignores OHSU's evidence that, if Plaintiff continued working unvaccinated, OHSU would have to facilitate *additional* testing, facilitate *additional* nurse coverage, and likely also undergo *additional* outbreak investigations (which were disruptive and consumed both time and financial resources).[4] Curlin Decl. ¶¶ 10–13, 24–25, 28. As *Trans World Airlines, Inc. v. Hardison* shows, "substantial increased costs" is not a high bar, and simply paying costs equivalent to "higher wages," or experiencing understaffing, is enough to meet the standard. 43 U.S. 63, 77, 83 n.14 (1977). The additional costs above that OHSU would likely have to incur readily meet *Hardison*'s modest standard.[5]

---

[4] Plaintiff notes that OHSU received federal funding through the Coronavirus Aid, Relief, and Economic Securities Act that would offset OHSU's spending. Opp. at 27. But Plaintiff cites no law (and OHSU is aware of none) providing that a business's "substantial increased cost" can be offset if the business receives another source income.

[5] Plaintiff also asks, "what would have been the greater hardship to OHSU: Losing hundreds of employees at a time when OHSU presumably needed as many hands on deck as possible, or

Page 12 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      **E.     Plaintiff does not challenge OHSU's assertions that accommodating Plaintiff would create staffing problems, impair critical functions, and inhibit OHSU from fulfilling its mission.**

Plaintiff focuses primarily on whether granting her an accommodation would create safety risks to patients and coworkers. But crucially, these are not the only issues discussed in OHSU's Motion for Summary Judgment. OHSU also shows that granting an accommodation would create staffing problems, impair critical functions, and inhibit OHSU in fulfilling its public missions to Oregonians. *See* Defendant's Motion for Summary Judgment, ECF No. 55 at 28–33. Plaintiff, notably, makes no effort to contest these arguments, nor does she offer any evidence capable of raising a genuine dispute of material fact on these issues. As such, the Court should find that these issues provide additional, independent bases for summary judgment.

**III.    CONCLUSION**

For the reasons above, OHSU's Motion for Summary Judgment should be granted.

DATED: May 1, 2024                STOEL RIVES LLP

                                              */s/ Alex Van Rysselberghe*
                                              THOMAS R. JOHNSON, Bar No. 010645
                                              tom.johnson@stoel.com
                                              BRENDA K. BAUMGART, Bar No. 992160,
                                              brenda.baumgart@stoel.com
                                              ALEX VAN RYSSELBERGHE, Bar No. 174836
                                              alex.vanrysselberghe@stoel.com

                                              *Attorneys for Defendant*

---

granting religious exceptions that would have prevented OHSU – and the MBU in particular – from being understaffed?" Opp. at 18. But this Court has already rejected this argument. In Opinion and Order of August 28, 2023, this Court reasoned, "If allowing employees to continue working at OHSU while unvaccinated would have resulted in a substantial burden to OHSU, it is irrelevant to this Court whether the course that OHSU ultimately chose also resulted in a substantial burden. Accordingly, this Court rejects Plaintiff's argument that OHSU should have chosen a different accommodation as irrelevant to the question of whether Plaintiff's proposed accommodation would have caused an undue hardship." ECF No. 35 at 8 n.2.

Page 13 – REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

123161381.2 0027345-00081